CHIBE JUSTICE WILLIAMS
delivered the opinion oe the court:
Section 4 of the amended charter of Louisville, approved June 2, 1865 (2d vol. Sess. Acts, 1865, p. 506), repealed section 3, article 7, city charter of 1851, and provides, in place thereof, that “ hereafter said general council may pass ordinances to procure the grading, paving, curbing, and furnishing with metal gutters, or regrading, repaving, recurbing, and furnishing with metal gutters, the whole or any portion, in width or length, of the sidewalks on any square or squares, or portions of a square, within the city limits, or such one or more of said modes of improvement thereof as the said council may direct or authorize to be done, and at the cost of the owner of property fronting on such side-walks, and tobe apportioned according to the amount actually done in front of such property, or parts of property ; and for such costs a lien is hereby created against such property or parts of property: Provided, That the general council shall have no power to subject such property-holder to the cost or expense of any repaving or recurbing, unless such work is necessary on account of the worn out or bad condition of the curbing or paving: Provided, That when the city changes the grade of any street, alley, sidewalk, or curbing, that has *466 been made according to the ordinances of the city, or under the direction of the city engineer, the owner of property fronting such street or alley shall, in nowise, be liable for any costs of such change.”
The city council, under authority of this section, as they supposed, enacted the following ordinance: “An ordinance to grade and pave the sidewalks on the west side of Fulton street, Portland, between Market street and Water street, or such portion of said sidewalks as the city engineer may direct.
“Be it ordained by the General Council of the City of Louisville, That the sidewalks on the west side of Fulton street, between Market street and Water street, or such portions of said sidewalks as the city engineer may direct, be graded and paved at the costs of the owners of property binding thereon; said work to be done subject to the supervision and control of the city engineer, and in accordance with specifications to be furnished by him,” fyc. The mayor and engineer did let out this work, and the undertaker, Norwood, entered into bond, stipulating that he “ will grade and pave the sidewalk on the west side of Fulton street, Portland, between Market and Water streets, or such portions of said sidewalk as may be directed by the city engineer to be graded and paved by ordinance passed by the general council of said city,” fyc., dated May 14, 1867. Said ordinance was passed November 1, 1866.
The general council having received the work after being done, apportioned to appellee three hundred and twenty-seven dollars and fifty-four cents of the costs thereof; and he having refused to pay it, appellants brought this suit, setting out said ordinance, the contract and future proceedings of the council, and ask judgment to sell his property; but which the court dismissed upon demurrer, because of the defect in the ordinance, and from which this appeal is prosecuted.
*467 In the repeal of section 3, article 7, of the city charter of 1851, some of the safeguards around the citizen’s rights of property were destroyed. It required a ten days’ notification through the public newspapers of the work proposed to be done, and the owner had the right thereon to do it himself; and if so done, the council had no further rights or power over the matter, whilst by the amendment of 1865, no such notification is required, nor has the owner any longer the preference of having the work done; but the first proviso takes away all right from the council to have repaving or recurbing done at the expense of the owner, “ unless such work is necessary on account of the worn out or bad condition of the curbing or pavingand the second proviso forbids the council from changing any grade, and having curbing and paving done at the expense of the property-owner, if he shall have previously graded, paved, and curbed under an ordinance of the city; and if it be an original grading and paving, it must be done by ordinance of the council, as declared in the body of the section.
The two branches of the city council alone can determine the necessity of the improvement, as well as its kind and character, and this upon a call of ayes and nays. Nowhere in the original charter or the amendments is there any authority to refer to any other body or person the determination of these things; because, as recently held by the Supreme Court of Missouri, in Ruggies & Bexter vs. S. A. Collier, this power to pass ordinances for improving streets, &c., is legislative, and cannot be delegated. It is also in effect a power of taxation, which is the exercise of sovereign authority, and nothing but the most explicit language can justify a court in holding that the Legislature intended to confer such vast power over the citizens’ property upon the mere discretion of any single officer, *468 much less a simple ministerial one. Nor can, as held in said case, the subsequent acts of affirmance by the council vitalize or validate a lifeless or invalid ordinance— one conferring no legal authority to make and let the improvements when put under contract.
The property-owners are not only interested in the improvements, but also in the kind and character thereof, including the grade and materials and width of pavement, &c.; therefore, they have the legal right to have these things passed on by the city legislature, the members of which are responsible to their constituency for all measures of oppression or neglect.
Pavement signifies to floor with stone, brick, or other hard substance, involving great difference of price as well as durability, and requiring the exercise of sound judgment to determine the economy of the one rather than the other, as the lowest in price might be the dearest to the owner, because of its want of durability. So> one grade might be proper and economical, whilst another would be injurious and wasteful.
The determination of all these matters has wisely been confided by the Legislature to the city council and not the engineer. The amount of the improvement, as well as its kind and character, must be ascertained before it is done. We perceive no reason why it is not quite as convenient to ascertain these facts before as after the ordinance ; but were it not so, the law and prudence and safety to the property-owner requires that it should be so. It is the exercise of a vast power over the rights and property of the citizen, and whilst necessary to the growth and convenience and commerce of the population of a large city and the public generally, yet such power should be exercised as the law directs, and strictly confined within legal limits.
*469 To ordain, generally, that a street or square should be graded and paved, or so much thereof as the engineer might direct, and according to specifications to be furnished by him, is simply to delegate to him the power to fix the grade, determine what materials should be used for the pavement, and how much of the street or square should be thus improved, and is not the determination of the council as to any of these things, but rather a general and unlimited letter of attorney to the engineer to have so much of a square or street as he may deem proper improved, in a manner to his own liking. To allow such an ordinance to bind the property-holder is to destroy all the safeguards thrown around him by law. Suppose, under the plenary power conferred by this ordinance, the engineer had determined that one portion of the square should be of one grade and the remainder of another, and thereby injure the owners of the lots; or had he determined one portion should be paved with brick, another with stone, and a third with plank or some other hard substance, who could say he was transcending his authority? Yet, had such been proposed to the council, it would likely have been unanimously rejected. Extreme as this may seem, yet it elucidates the possible wrong such ordinances may inflict upon the owners, and the great departure it would be from what the law contemplates as an ordinance.
It is as imperative on the council to ascertain what portion of a square needs improvement, when all does not need it, as it is to ascertain when a whole square needs it, and also as imperative to fix the character and quality of the work to be done on a part, as the whole of a square. We do not say that when a portion or all of a square needs improvement, and the council has ascertained these facts, and designated the grade and *470 kind of improvement, that, in carrying out the general plan and outline of the improvement so designated, the engineer may not be vested with the power to vary so as to make the work practically subserve the purposes of the general scope of the ordinance as ,developments may determine; but what we do say is, that the council must determine the portion of the street or square, the grade and kind of pavements, and not authorize the engineer to ascertain and carry out these things without the approval of the council by ordinance.
If the report of the engineer in fixing the grade, designating the portion, and recommending the kind of pavement to the council, should be injurious or oppressive to the property-holder, he would have the right to present his objections to the council before its final determination, and defeat the enactment of the ordinance; and though he may often not be informed even of these, and therefore lose the opportunity to be heard, yet this only the more clearly shows that the council should certainly know what kind of improvements are to be made, as otherwise the property-holder would lose both the right to protect himself in person or by his representative in the council; hence it should be the more clearly informed before he is bound. As said by the city engineer in his able report of 1868, the nearer a strict cash system of compensation for public works can be approached, the more economical it will be; of course the more speedy the recovery, the more summary the remedy, and the fewer the obstructions and hazard to the contractor, the cheaper and more economical it will be to the taxpayer and property-owner.
However specious may be the arguments as to the interest of the individual owners in the enlarged and unauthorized discretion thus conferred upon the engi *471 neer, the great security of the citizen, at least, is always to be found in strictly limiting official power within rigid legal bounds. Power is ever aggressive, and, under one specious pretext and another, perpetually struggling to strengthen its position and enlarge its sphere, and succeeds, to a greater or lesser degree, even when surrounded by the most watchful and jealous vigilance; but when not so surrounded, its strides become fearful and detrimental to the rights and interest of the citizen.
Wherefore, the judgment is affirmed
Judge Robertson non-concurring.