CHIEF JUSTICE WILLIAMS
delivered the opinion oe the court.
These were suits by Dressman, as contractor, against the lot-owners and city, to recover an assessment for improving certain districts of certain streets in Covington, under ordinances of the city council; which ordinances, and all the council proceedings thereon, are made part of his petition.
The ordinance for improvement was passed upon the petition of a majority of the lot-owners, some of the defendants being among the petitioners.
A demurrer was sustained as to the lot-owners, and the petitions as to them dismissed, but overruled as to the- city, and judgment rendered against her; and this appeal seeks a correction of both judgments.
By an amendatory act to the city charter of February 24, 1865 (1 Session Acts, 412), it is provided: “If the court shall be of opinion that from irregularity or illegality of the proceedings of the city council, or other cause, some portion of the tax assessed upon the property described can not be legally or equitably enforced, the whole proceedings of the council shall not therefore be void, and the whole tax assessed not enforceable; but such portions of the proceedings of the council as are regular, and according to the charter and ordinances in reference thereto, shall be sustained, and the portion of *212 the taxes assessed in pursuance thereof shall be a lien upon the property described in the proceedings, and shall be enforced by said court on such property to that extent; and for this purpose any errors, irregularities, or illegal proceedings as to the assessment or otherwise may be corrected by the court, so that no person’s property may be improved at the general expense of the city when in equity he ought himself to pay for the same.”
This amendment to the city charter gives equitable powers to the court, and an equitable rule of adjustment, and gives an equitable lien, found in no other charter ever heretofore before us. As the council was authorized by other provisions of the charter, upon the petition of those owning a majority of the ground, to order such improvements, which bound all the owners, so this equitable rule and power also applies to those who did not equally with those who did sign the petition. It was evidently intended by this amendment to give the court power to enforce such a portion of the assessment as would be right and equitable, though the ordinances were not strictly and technically legal.
As this work was done at the instance of the lot-owners, and as they raised no objections to the work while it was being done and their property improved, we shall not closely scrutinize the ordinances to see whether they technically comported with the law; but so far as the same was an exercise of legal authority we shall uphold it, being no longer bound to see that the manner of its exercise was also in strict and technical conformity with the legal provisions under which the power was exercised.
The ordinance directs that' the said districts shall be graded, paved, curbed, and macadamized. It then ordains the kind of materials to be used, the size of the stone, the quantity to be put on, and the manner of putting both the *213 curbing and macadamizing, how wide the pavements, and the dimensions of the gutters, etc., all with great particularity.
The grade, however, was not specified, because, as insisted on by the city, it was wholly unnecessary; the grade of all the streets, by districts, having previously been fixed by a general plan and survey of the city. But, however this may be, if unnecessary grading was done, it would be but an equitable defense, under the provisions of this charter, in this class of cases, where the work is done at the instance of the lot-owners.
The character of the work and the materials to be used all being directed in the ordinance, the powers conferred by it on the engineer and internal improvement committee were merely to see that the contractor performed according to this ordinance and the contract made in pursuance to it; therefore is not like the case of Hydes & Goose v. Joyes, 4 Bush, 464, where all this was left to the discretion of the engineer on a general ordinance that the streets be graded, paved, etc., under his superintendence, and left all these to his unlimited discretion. The internal improvement committee reported this work done according to contract, accompanied with the engineer’s certificate of the same, and the “ work toas acceptednot only so, but an ordinance apportioning the costs thereof among the owners was enacted.
This ordinance is', however, technically defective in not naming the lot-owners, and apportioning to each a given sum commensurate to the front feet of his ground, as possibly some lot may have changed ownership after the work was done, and before assessment made and collected. But as it substantially apportioned to each owner the amount he owed, where no change in the ownership had occurred, we see no equitable reason for holding the *214 ordinance fatally defective because of this uncertain possibility, especially as no such is assigned as a reason.
There is, however, an item of several hundred dollars for masonry in the making of a necessary culvert. It is insisted by the city that this is authorized by the first section of the amendment to the charter of February 3, 1864, Session Acts, 306, declaring that “the culverting and drainage shall be done with and included in the costs and expenses as a part of the grading.” But as this culverting and masonry was not specially provided for in the contract, it must either be considered as part of the contract for grading, else not provided for in either the ordinance or contract; and in either view it is not chargeable to the lot-owners, however the city may be under obligation to pay for it to the contractor.
There is also a covenant in the contract ‘ ‘ to keep in good order and repair, at his own proper cost and expense, all the work herein specified, for the period of one year” after it is approved.
In the ease of City of Louisville v. Henderson, 5 Bush, 515, this court held that a similar contract to keep in repair for six months, according to the evidence in that case, meant simply a guaranty that the work was well done, as if so it would need no repair within that time. It is cei’tainly not a felicitous way of expressing a guaranty for sound, good work; yet that may be what it means; at least it would be so presumptively held on demurrer, when, if such is not the case, this may be put in issue and elucidated by the evidence; and on trial, if it should appear that this imposes an additional burden on the property-holders, and is not a mere guaranty by the contractor that he will well perform his work, they should to that extent be released; for it is the duty of the city to keep such streets in repair, and not impose this on the property-holders.
*215 The demurrers were improperly sustained on the part of the lot-owners and correctly overruled as to the city. Wherefore the judgment sustaining the demurrer is reversed, with directions to overrule the same, and to proceed to trial should defendants offer an issue, and adjudicate the cases upon the principles of equity as herein indicated; but the judgment is affirmed overruling the city’s demurrer.
The city will recover its costs herein against the lot-owners, and Dressman will recover his costs against the city.