CASE 44—ACTION TO ENFORCE A LIEN FOR STREET IMPROVEMENT—
JUNE 19.

# Richardson, &c., v. Mehler.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL. AFFIRMED.

MUNICIPAL CORPORATIONS—STREET ASSESSMENTS—VALIDITY OF ORDI-
NANCE—REFERENCE TO PLANS AND SPECIFICATIONS—POWER OF
COUNCIL TO CURE DEFECTS—NOTICE OF INSPECTION—AUTHORITY OF
ASSISTANT ENGINEER TO RECEIVE WORK—SPECIAL LEGISLATION RE-
LATING TO MUNICIPAL GOVERNMENT—ERRONEOUS APPORTIONMENT—
FAILURE OF ADVERTISEMENT TO FIX TIME FOR COMPLETING WORK—
OBJECTION WAIVED.

Held: 1. Under Kentucky Statutes, section 2826, part of charter of
cities of first class, providing that "no public way shall be
. . . constructed . . . except by ordinance recommended
by the board of public works," the extent and character of the
improvement must be fixed by the ordinance.

2. An ordinance providing that the carriageway of a certain street,
from the center line of one street to the center line of another
street, shall be of a certain width, "and shall be improved by
grading, curbing, and paving with the vitrified brick or block
pavement, with corner stones at the intersections of streets
and alleys, and footway crossings across all intersecting streets
and alleys, in accordance with the plans and specifications on
file in the office of public works," sufficiently designates the ex-
tent and character of the improvement, though the plans and
specifications referred to were not in existence when the ordi-
nance was passed, and can not, therefore, be considered in aid
thereof; the ordinance being sufficient without reference to
plans and specifications.

3. Kentucky Statutes, section 2834, part of charter of cities of first
class, providing that "no error in the proceedings of the general
council shall exempt from payment after the work has been
done as required by either the ordinance or contract, but the
general council, or the courts in which suits may be pending,
shall make all corrections, rules, and orders to do justice to all
parties concerned," does not apply where an ordinance for the
construction of a street is wholly void, as no liability can arise
unless the proceedings have as a foundation an ordinance which

is at least valid in part; and therefore the mere approval by the council of a contract entered into under a void ordinance will not suffice.

4. Under Kentucky Statutes, section 2837, providing that "the board of public works shall, by one insertion in one of the daily newspapers published in the city, give notice of the time and place fixed for the inspection and reception of the work by the board or its deputy or deputies," the inspection and reception of the work, being a ministerial act, may be proved by parol testimony, like any other fact, and it need not appear of record that a day was fixed for the inspection of the work, or that notice thereof was given; the requirement of Kentucky Statutes, section 2804, that all official business of the several boards of the city shall appear of record while mandatory as to the boards, being directory merely so far as affects the rights of others.

5. As the statute authorizes the "deputy or deputies" of the board to receive or reject the work, and the chief engineer was, when elected, given power by order of the board, to receive or reject work as agent of the board, the assistant engineer appointed by the board may, when acting in place of the chief officer, accept the work; and, in any event, his action may be ratified by the subsequent action of the board approving the report of inspection and reception of the work.

6. Kentucky Statutes, section 2838, providing that in actions by a city of the first class to enforce liens for the cost of street improvements copies of the ordinance, contract, and apportionment shall be *prima facie* evidence of every fact necessary to enable plaintiff to recover, relates to a matter affecting municipal government, and is therefore valid, though it is special legislation; as Constitution, section 156, providing for the classification of towns and cities, authorizes special legislation for purposes of municipal government.

7. A *prima facie* case is made out by copies of the ordinance, contract, and apportionment, though the apportionment be erroneous, and must be corrected.

8. The time for the completion of the work should be fixed by the advertisement, and not after the contract has been let; but the objection that this was not done comes too late after the contract has been made and approved, the work done and accepted, and the apportionment made, in the absence of anything to show that defendants were prejudiced by the omission.

9. While an ordinance requiring persons engaged in the doing of public works of original construction to obtain a license was unconstitutional, yet as it does not appear that the ordinance

Richardson, &c., v. Mehler.

was ever enforced, or that any one was prevented thereby from bidding, the objection to the assessment because of the existence of the ordinance comes too late after the work has been done and accepted, and the apportionment made.

JUDGE GUFFY DISSENTING.

O H. HARRISON, ATTORNEY FOR APPELLANTS.

PROPOSITIONS DISCUSSED AND AUTHORITIES CITED.

1. The power to prescribe the kind and quality of materials to be used in the original construction of public ways in cities of the first class, when such construction is at the cost of abutting property owners, is vested by law in the city Legislature, and such power can not be delegated to, nor exercised by, any executive or ministerial officer. Such power can be executed only by ordinance. It is competent in such ordinance to refer to plans and specifications for such improvement as being on file in some public office, and such reference makes them as much a part of the ordinance as if fully set forth in the ordinance, but when such plans and specifications, so referred to, have no existence, the ordinance is void. Hydes v. Joyes, 4 Bush, 464; City of Henderson v. Lambert, 14 Bush, 24; Zable v. Baptist Orphans' Home, 92 Ky., 94; Dulaney v. Bowman, Mss. Opn. Jan. 28, 1875; Anderson v. Mayfield, 93 Ky., 236; Nunes v. Willish, 12 Bush, 367; Doyle v. Belleview, 1 Ky. Law Rep., 168; City of Louisville v. Nevin, 14 Ky. Law Rep., 203; Worthington v. Covington, 82 Ky., 267; Covington v. Boyle, 6 Bush, 206; Whitehead v. Hippel, 11 Ky. Law Rep., 386; Ky. Stats., secs. 2826, 2834 and 2837; Turner v. Wilson, 36 Ill., 392; Alton v. Middleton, 158 Ill., 442; Merritt v. Kewanee, 175 Ill., 537; Chicago & N. P. R. R. v. Chicago, 174 Ill., 439; Brown v. Dana, 22 Cal., 23; The Municipality v. Morgan, 1 La. An., 111; The City v. Partlow, 91 N. C., 550; Roth v. Hax, 68 Mo. App., 283; Barber Asphalt Co. v. Ulman, 137 Mo., 543; Erie v. Griswold, 39 Atl., 231; Kockersperger v. Warneke, 50 N. E., 221.

2. When the law requires records to be kept, they are the only lawful evidence of the actions to which they refer, and such records in collateral proceedings can not be contradicted or supplemented by parol. The whole policy of the statute would be defeated if they could rest partly in writing and partly in parol. That which is not established by the record can not be shown by parol. Greenleaf on Ev., 15th edition, vol. 1, sec. 86; Murphy v. City of Louisville, 9th Bush, 189; Beyer v. Newcastle, 124 Ind., 186; Perryman v. Greenville, 51 Ala., 511; Moore v. Greenleaf, 4 Greenleaf, 44; People v. Madison, 125 Ill., 344; Stev-

enson v. Bay City, 26 Mich., 46 Morrison v. City of Lawrence, 98 Mass., 221; Board v. Chetwood, 8 Ind., 507; Harris v. Zable, 5 Ky. Law Rep., 114; Dumesnil v. Louisville, 4th Ky Law Rep., 15; Highby v. Bunce, 10 Conn., 443; People v. Bailhachs, 52 Cal., 310.

3. Section 2838 of Kentucky Statutes, in so far as it prescribes that in actions to enforce liens, attested copies of the ordinance contract and apportionment shall be *prima facie* evidence of every fact necessary to entitle the plaintiff to the enforcement of his alleged lien, is special or local legislation and as such is unconstitutional. Sections 59 and 60, 75 and 156 of the Constitution; City of Philadelphia v. Haddington M. E. Church, 115 Pa. St. R., 291; Ayers, &c. v. Westfield, 122 Pa. S. R., 266; Engle v. Bienhauer, 137 Pa S. R., 494; City of Louisville v. Kuntz, 20 Ky. Law Rep., 805; Wolflang v. McCollum, 7 Ky. Law Rep., 338; Johnson v. Terrell, 8 Ky. Law Rep., 219; Sec. 2775 Ky. Stats.; Sec. 2899.

4. Under the law governing cities of the first class all contracts for local improvements to be paid for by the abutting property owners, must be awarded to the lowest bidder, after due advertisement of all essentials of the contract. In such contracts, the time for the completion is one of the essentials, and should be advertised so that all bidders will be placed on the same footing. A mere ministerial officer can not fix such time, any more than he can prescribe the materials which enter into the construction of the improvement, and when an award is made before such time is fixed, the award is a nullity. Osborn v. Lyons, 73 N. W., 650; 70 Mo. App., 539; 64 Mo. App., 352; 80 Cal., 1; 81 Cal., 162; 89 Cal., 316; 27 Pac., 52; 31 Pac., 844; 32 Pac., 226; 29 Atl., 158; 14 Bush, 24.

5. By section 2837, Kentucky Statutes, it is made the duty of the board of public works to attend at the time and place named in its notice for the inspection and reception of the improvement therein referred to. This power and duty is *quasi* judicial, and can only be exercised by the board itself. Section 2806 is the only authority for the appointment of a deputy, and it restricts the selection to one of its own members. But, if it be conceded that the power can be exercised by a deputy, there is no authority in the statute to an assistant of such deputy to act in the place of the deputy or the board. Section 2806, Kentucky Statutes, Harris v. Zable, 5 Ky. Law Rep., 114; 4 Ky. Law Rep., 14; Sec. 291, Beach on Public Corporations and authorities there cited.

6. By section 2829 Kentucky Statutes, it is made the duty of the board of public works to award the contract to the lowest

bidder, and any act upon the part of the local government which restricts competitive bidding or tends to the creation of a monopoly, makes void any contract for an improvement at the expense of the abutting property owner. The exaction of a $100 license as a prerequisite in any one one to bid to construct such improvement has the effect to lessen the number of bidders and to increase the cost of such improvement, and makes void a contract thus awarded. 49 N. E., 532; 45 Ill., 90; 138 Ill., 268; 22 N. E., 798; 149 Ill., 353; 36 N. E., 553; 1 Add. Contracts, sec. 273; 2 Beach Mod. Cont., sec. 1108; 2d Biennial Comp. Ords., City of Louisville, page 134; Figg v. Thompson, 20 Ky. Law Rep., 1322.

THE NEW QUESTION ARGUED IN THIS SUPPLEMENTAL BRIEF.

Section 2838, Kentucky Statutes, is unconstitutional for the reasons stated in original brief. If the court shall hold otherwise, then the appellees are not entitled to the benefits of said statute. It is a chain of three links, consisting of copies of the ordinance, contract and apportionment. If one link be broken, then it loses its effect, and the parties relying on it must prove their case like any other litigants. In this case the chancellor held the apportionment made by the board of public works as void, and made a new apportionment of its own. A link in the chain being thus destroyed, the appellees stand in the case without any proof. See the case of the Texas Transportation Co. v. Boyd, 67 Texas, 153, where this identical question is decided.

BODLEY, BASKIN & MORANCY, FOR APPELLEES.

SYNOPSIS OF POINTS AND AUTHORITIES.

1. The board of public works has exclusive control over the construction of all streets in Louisville. Ky. Stats., sec. 2825. It alone has authority to prepare plans and specifications after passage of the ordinance directing the work. Ky. Stats., secs. 2829 and 2830. The ordinance need not embody the details contained in plans and specifications. 4 Bush, 469, Hydes & Goose v. Joyes; 99 Ky., 426, Frankfort v. Murray; 42 N. E. R., 1113, Connersville v. Merrill.
2. The general council selects the newspapers in which official notices are to be published. Ky. Stats., sec. 2773. The board of public works did everything necessary to create a lien on abutting property, as shown by the evidence.

Richardson, &c., v. Mehler.

It had authority to appoint a deputy under Ky. Stats., sec. 2837.

But even if it did fail to keep a full record of its proceedings (which it did not) such failure can not invalidate the contractor's lien. Kentucky Statutes, section 2804; Dillon Mun. Corp., sections 300 and 301 (237 and 238); 7 Pet., 28 U. S. v. Fillebrown; 11 Vt., 402, 421, Hutchinson v. Pratt; 1 Dutch (N. J.), 297, Bigelow v. Perth Amboy; 9 Texas, 69, San Antonio v. Lewis; 42 Atl. R., 410, Goodrich v. Senate; 124 Ind., 87 Beyer v. New Castle; 49 N. E. Rep., 581, Bloomington v. Phelps.

3. Certified copies of ordinance, contract and apportionment furnish *prima facie* evidence of every fact necessary to establish the lien of the contractor. Kentucky Statutes, section 2838; 99 Ky., 232, McHenry v. Selvage; 19 Ky. Law Rep., 154 Kellar v. Gleason; Ky. Stats., sec. 2775; 19 Ky. Law Rep., 128, Stone v. Wilson; — Id., 558, Com. v. Taylor; — Id., 1485 Winston v. Stone; 20 Ky. Law Rep., 1551, Crecelius v. City of Louisville; 137 Ind., 544, Asphalt Pav. Co. v. Ullman.

4. After the work has been done, property owner can not defend on ground that advertisement or letting was irregular. The court will disregard mere technical irregularities and do justice between the parties. 18 Ky. Law Rep., 241, Fehler v. Gosnell; 51 N. Y. S., 655, Providence Retreat v. Buffalo; 49 N. E. R., 581, Bloomington v. Phelps; 147 Ind., 521, Town of Woodruff Place v. Roschig; 137 Ind., 544, Asphalt Pav. Co. v. Ullman; 125 Ind., 455, Paving Co. v. Edgerton; Ky. Stats., sec. 2834; 19 Ky. Law Rep., 1964, Isenberg v. Selvage; 10 Bush, 240, Murray v. Tucker; 5 Ky. Law Rep., 114, Harris v. Zable; 12 Bush, 570, Preston v. Roberts.

Since writing the foregoing brief, we have found some additional authorities in support of our argument therein.

In 49 N. E. R., 581, City of Bloomington v. Phelps, the court held:

1. That the failure of the municipal record to show the publication of a notice to property owners as to the improvement does not defeat the contractor's lien. The court quotes with approval the words of the court in Paving Company v. Edgerton, 125 Ind., 455, viz.:

"It seems to be settled . . . that in matters of local improvement where jurisdiction over the whole subject is conferred upon a municipal corporation, with power to make local assessments for that purpose, any failure to comply strictly with any

statutory requirement not affecting the jurisdiction will be regarded as a mere irregularity and in a collateral proceeding will be disregarded."

2. That the property owner, after the work has been done, can not complain that it was not let to the lowest bidder. His remedy is by injunction before the work is done.

In 147 Ind., 521, Town of Woodruff Place v. Raschig, the court approves the case of Cummins v. the City of Seymour, 79 Ind., 491, and holds that

"Until the contrary appears, the officers of a public corporation are presumed to have done their duty."

In 137 Ind., 544, Asphalt Paving Company v. Ullman, the syllabus is as follows:

"8. The special tax bills sued upon for street improvements in St. Joseph, Mo., are held *prim facie* evidence of the liability of the property to the charge therein stated. They place on the property owner the burden of proving any facts constituting a defense to the bills.

"9. The court applies the maxim, *omni rite acta*, and assumes (in the absence of evidence to the contrary) that municipal authorities have proceeded in accordance with the law in imposing special taxes for a street improvement."

In 51 N. Y. S., 655, Providence Retreat v. City of Buffalo, which was a street improvement case, the court said:

"In considering cases of this character, it will be well to have in mind a most salutary rule, and one which is quite general in its application, namely, that the proceedings by which a meritorious assessment is levied for the cost of a public improvement are presumed to be regular; and when the objections thereto are purely technical in their character, the courts should not, in the absence of evidence of substantial injury be over-zealous to find a reason for declaring the same to be invalid."

We call the court's attention to these additional authorities and ask that the judgment below be affirmed.

OPINION OF THE COURT BY JUDGE DuRELLE—AFFIRMING.

This is an appeal from a judgment enforcing a lien upon abutting lots for improving the carriageway of Twenty-eighth street, between Kentucky street and Greenwood avenue, in Louisville. The case has been so carefully prepared the points relied on so clearly presented and so elaborate-

Richardson, &c., v. Mehler.

ly briefed, that we regret that in the limited time afforded
us it will not be possible to do much more than state
the questions and indicate the conclusions we have
reached.    The ordinance provided that:   "The carriage-
way of Twenty-eighth street, from the center line of Ken-
tucky street to the center line of Greenwood avenue, shall
be thirty-six (36) feet in width, and shall be improved by
grading, curbing and paving with the vitrified brick or block
pavement, with cornerstones at the intersections of streets
and alleys, and footway crossings across all intersecting
streets and alleys, in accordance with the plans and specifi-
cations on file in the office of public works."    It also pro-
vided that the work should be done at the cost of the
owners of ground, as provided by law.

The first question presented is the validity of the or-
dinance.   The law for the government of cities of the
first class provides (section 2826, Kentucky Statutes) that
"no public way shall be  .  .  .  constructed  .  .  .  ex-
cept by ordinance recommended by the board of public
works."   This is a legislative function, to be performed
by the municipal legislature.   The fact that it can not
be performed except upon the recommendation of a branch
of the executive department does not render it the less
legislative in its character.   After the completion of the
work under such an ordinance, it is provided (section 2837)
that, before the cost of the improvement becomes a charge
upon the lots contiguous thereto, there shall be an "in-
spection and reception of the work" by the executive rep-
resentative of the city, at a time and place fixed, and of
which notice is required to be given, when the owners of
such lots may, in person or by agent, "appear and be heard
as to whether such improvements have been made in ac-
cordance with the ordinance authorizing the same and the

contract therefor." Under the old charter of Louisville, the council originated its own legislation, and the inspection and reception of the work was performed by the engineer. Both proceedings were prerequisites to the creation of the lien; but we can not concur in the contention on behalf of the appellee that there has been a material change in the nature of the power of the council to provide for such improvement under the act for the government of cities of the first class from the power exercised by that body under the old charter of the city of Louisville, or in the character of the action formerly taken by the engineer, but now done by the board. The new act merely puts limitations upon the power of the council, but in no wise changes the nature of the power. It is still legislative. So, as providing for the improvement is legislative, it must be performed by legislative act—that is, by ordinance; and the ordinance must prescribe the extent of the improvement authorized, and the character of improvement to be made. This doctrine is abundantly supported by the authorities. Hydes v. Joyes, 4 Bush, 464 (96 Am. Dec., 311); City of Henderson v. Lambert, 14 Bush, 28; Zable v. Orphans' Home, 92 Ky., 90 (13 R., 385), (17 S. W., 212; 13 L. R. A., 668). The power to impose the burden of local improvements, being legislative, can not be delegated. And, while it has been held by this court repeatedly that certain provisions of the Constitution with regard to taxes *co nomine*, and the mode of their assessment, did not apply to burdens of this character, because it was held that those provisions were not intended by the framers of the Constitution to apply to them, the character of the power remains unchanged, and the imposition of the cost of local improvements as a charge upon property is none the less an exercise of the sovereign

power of taxation. Hydes v. Joyes, 4 Bush, 467 (96 Am. Dec., 311); Bradley v. McAtee, 7 Bush, 671 (3 Am. Rep., 309). The extent and character of the improvement must be fixed by legislation. But when we come to consider what degree of definition and what extent of detail in statement is required by this rule, the line of demarkation becomes more shadowy. In general terms the doctrine is perhaps as well stated by Chief Justice Williams in Hydes v. Joyes, supra, as in any case to which our attention has been called. It is there said: "The amount of the improvement, as well as its kind and character, must be ascertained before it is done." And again: "It is as imperative on the council to ascertain what portion of a square needs improvement, when all does not need it, as it is to ascertain when a whole square needs it; and also as imperative to fix the character and quality of the work to be done on a part as the whole of a square. We do not say that, when a portion or all of a square needs improvement, and the council has ascertained these facts, and designated the grade and kind of improvement in carrying out the general plan and outline of the improvement so designated, the engineer may not be vested with the power to vary so as to make the work practically subserve the purposes of the general scope of the ordinance as developments may determine; but what we do say is that the council must determine the portion of the street or squares, the grade and kind of pavements, and not authorize the engineer to ascertain and carry out these things without the approval of the council by ordinance." Under the general doctrine thus stated, we find that ordinances which designated the kind and character of the work to be done by reference to a general ordinance which

prescribed how streets of that character should be constructed have been uniformly upheld (Fehler v. Gosnell, 99 Ky., 380 (18 R., 238),(35 S. W., 1125), the general ordinance in such cases being read into the ordinance providing for the improvement. So, too, it has been held sufficient to refer to the ordinance, "even to an identified unofficial paper, for the details of the kind and amount of materials and labor to be used in the construction of the improvement; but in all such cases the ordinance or writing referred to as setting out in detail the character, kind and amount of material and labor to be used in the improvement is to be taken and construed as if it was part and parcel of the ordinance containing the reference." Delaney v. Bowman, manuscript opinion, January 29, 1875; Burnett's Code, p. 543. See, also, Anderson v. City of Mayfield, 93 Ky., 230, 14 R., 370, (19 S. W., 598); Nunes v. Wellisch, 12 Bush, 363. The ordinance under consideration is amply sufficient to designate the extent of the improvement. It in general terms designates the character of the improvement, which is to be by grading, curbing and paving with the vitrified brick or block pavement, with corner stones at the intersections of streets and alleys, and footway crossings across all intersecting streets and alleys.

It is most earnestly contended by appellants that, as the ordinance provides that the improvement shall be made "in accordance with the plans and specifications on file in the office of the board of public works," and as it is conceded, or is at least highly probable from the evidence, that at the date of the adoption of the ordinance there were no plans and specifications of the improvement of the part of Twenty-eighth street designated on file in the office of the board, the ordinance is absolutely void for uncertainty; or, if it be taken

Richardson, &c., v. Mehler.

as referring to plans and specifications thereafter to
be prepared and filed by the board in its office,
that it is void as a declaration of legislative au-
thority to a ministerial board, under the doctrine laid
down in Hydes v. Joyes, supra; Zable v. Orphans' Home
supra. There is much force in these contentions, and it must
be conceded that the ordinance in question is dangerously
near the line. We are clearly of opinion that the ordinance
can not be construed as referring to those "complete draw-
ings and specifications of said work" which by section 2829,
it is the duty of the board to prepare before it advertises
for bids. That section provides: "Whenever said board
shall order any work to be done which, either by order of
said board or according to law, is to be performed by in-
dependent contract, said board shall prepare and place on
file in the office of said department complete drawings
and specifications of said work." This seems to us clearly
to look to the preparation of drawings and specifications
giving complete details, with drawings of the work as it is
to appear when completed, and estimates the amount of
the various kinds of work to be done and material to be
employed in its completion, and to the preparation of such
drawings, etc., after the work is ordered to be done by in-
dependent contract, and before the advertisement for bids.
The plans referred to in this section are not required to
be made before the improvement is determined upon by the
council, and can not be construed to be referred to in the
ordinance. They are the complete working drawings,
specifications, and details upon which the bidders base
their estimates and bids, and must, therefore, under the
section, be in the office, and notice be given of their exist-
ence there, before the advertisement and the allotting of

the contract.    These are the plans and specifications referred to in section 2830, which the board is, by the statute, authorized to alter, and modify; that section appearing to refer to matters of detail executive in their nature, the necessity for which may arise in the course of the execution of the work, and which, as the statute (section 2825) gives the board exclusive control over the construction of the streets, may properly be left to the executive discretion of the executive board.    It follows, therefore, that as drawings and documents which did not exist can not be held to be part of an ordinance because referred to therein, the drawings and specifications made subsequent to the passage of the ordinance can not be considered in aid of its terms.

Nor are we able to concur in the contention that the subsequent approval of the contract by the council is such legislative action upon the plans and specifications prepared subsquently to the enactment as to write them in the ordinance; or that if the ordinance is void, it is within the curative power of the court, under section 2834, by which it is provided:    "No error in the proceedings of the general council shall exempt from payment after the work has been done as required by either the ordinance or contract, but the general council, or the courts in which suits may be pending, shall make all corrections, rules and orders to do justice to all parties concerned."    Being legislative action, the ordinance must, if defective, be remedied by legislative action; and the statute distinctly provides (section 2777) that "no ordinance shall be altered or amended in any way except by repealing it."    Therefore, if the ordinance was void, the mere approval by the council of a contract entered into under it would not suffice.    And we think the powers conferred by section 2834 upon the

court are, in substance, the same as those possessed by the council,—that is, to rectify such errors as the council might have rectified,—and do not extend to validating a void ordinance, which can only be done by its repeal and re-enactment.    The correct doctrine seems to be that the liability for such improvements must, under the statute, be created by legislative action of the council, and that legislation must be valid at least in part, or no liability can arise.    If the foundation is a nullity, none of the subsequent proceedings can be validated.    If the ordinance be wholly void, it can not be authority for a valid contract, for there is no authority to make the contract except the ordinance. By such an ordinance there is created an obligation to pay for a service for which there is no common-law liability.  Whitefield v. Hipple (11 Ky. Law Rep., 386), (12 S. W., 150). It could not be created except for the statute. It must be created in conformity thereto.    The statute (section 2826) requires that the construction of streets shall be done by ordinance.    It forbids that it shall be done except by ordinance.    But, if the ordinance be valid, wholly or in part, the subsequent proceedings may be corrected by the council, or by the courts if the council fails to do so, provided the work has been done as required by either the ordinance or contract.    This doctrine is supported by the argument in the cases of Hydes v. Joyes, supra; Murphy v. City of Louisville, 9 Bush, 194; Murray v. Tucker, 10 Bush, 240; Worthington v. City of Covington, 82 Ky., 268 (6 R., 237). The question, therefore, is narrowed to this: Is the ordinance sufficient without reference to plans and specifications? Upon this question the members of the court are not in entire accord.    But a majority of the court have reached the conclusion that the designation of the

character of the work in the body of the ordinance is suffi-cient. The general nature of the work is undoubtedly prescribed by the provision that it is to be by grading, curbing, and paving with vitrified brick or block pave-ment. And, while there are many different kinds of vit-rified brick, and possibly a greater number of ways of lay-ing a pavement, the general nature of the pavement is the same in all, and so known to be to those who are famil-iar with such improvements. We are the more willing to concur in this view for the reason that the statute re-quires complete plans and specifications of the work to be filed in the office of the board of public works for the inspection of the bidders before the advertisement and letting; so that no harm can come to the citizens by rea-son of the bidders being kept in ignorance of details; and further requires that it is not until after the drawings and specifications are complete that the contract with reference to them is entered into. This conclusion is supported by the opinion of Judge Hazelrigg in Board v. Murray, 99 Ky., 425 (18 R., 279), (36 S. W., 180).

The next question is as to the *sufficiency of the record of inspection and reception of the work.* Section 2837, Ken-tucky Statutes, provides that: "When improvements in public ways have been made, . . . the board of pub-lic works shall, by one insertion in one of the daily news-papers published in the city, give notice of the time and place fixed for the inspection and reception of the work by the board, or its deputy or deputies, and such owners, their agents and representatives may appear and be heard as to whether such improvements have been made in ac-cordance with ordinance authorizing the same, and the con-tract therefor." It is claimed that, as the acceptance of the work provided for in the section quoted is, in the absence

of fraud or collusion, conclusive upon the property owners after the improvement has been made in accordance with the ordinance and the contract, the board is thereby created into a kind of tribunal of limited jurisdiction and that the facts necessary to authorize its jurisdiction must appear in its record; that the statute (section 2804) provides that "all official business of the several boards shall be transacted at the offices thereof, and a continuous indexed record or minute shall be kept at such offices respectively of such business," and requires further that each board shall cause a full journal of its proceedings to be kept; and that from this it follows that, as it was by appellants shown that there was no entry in the records of the board of public works showing the fixing of a day for the inspection of the work done under this ordinance, or the selection of a newspaper in which notice should be given, or the direction that such notice should be advertised, the board had no jurisdiction to act by inspecting and accepting the work. We do not think this contention can be sustained. It is not contended that the notice fixing the time and place for the inspection and reception of the work was not in fact published in such a paper as the law requires, or that the acting chief engineer of the city did not then and there appear, and on behalf of the board inspect and receive the work, as completed in accordance with the ordinance and contract. On the contrary, the record of the board relied on shows a recital in the order for the apportionment that these things had been done, as does also the certified copy of the engineer's report. We do not think the authorities relied on, and which are for the most part cases where the record of legislative bodies was in question, apply to this case. The board is ministerial and executive in its nature, and, while the inspection of work and the de-

termination whether it has been done in compliance with the contract may seem to partake of the nature of judicial action, it is not more so than many other acts which are considered to be purely ministerial; as, for example, the reception of goods under contract by the agent of one of the contracting parties. The board, it is true, is required to keep a record of its proceedings; but, while that provision might be considered mandatory as to the board, we think it directory in so far as the rights of others are concerned. The inspection and reception of the work is a ministerial act, and may be proved like any other fact. The same ruling would seem to apply as applies to acts of corporations. Dill. Mun. Corp., section 300. The board was authorized to inspect and receive work by deputy or deputies. The record discloses that it authorized the chief engineer, as agent of the board, to receive or reject the work. It appears that the chief engineer, when elected, was, by order of the board, given "power, as agent of the board of public works, to receive or reject work," and it is contended that, if the "agent" can be construed to be "deputy" under the statute, it gave no authority to an assistant engineer to so accept work as the agent of the agent appointed. The majority of the court are of opinion that, the act being ministerial, and the statute authorizing it to be done by deputy or deputies, it may be performed by a subordinate agent appointed by the board while acting in the place of the chief officer, and, at all events, such action may be ratified by the subsequent action of the board approving the report of inspection and reception of the work. Barrett v. Stone Co. (21 Ky. Law Rep., 669) (52 S. W., 947).

The next question presented is upon the constitutionality of section 2838. That section provides: "In all actions to

enforce liens, a copy of the ordinance authorizing the improvements or work, a copy of the contract therefor, and a copy of the apportionment—each attested by the comptroller—shall be *prima facie* evidence of the due passage, approval, and publication of the ordinance, of the due execution and approval of the contract, and shall also be *prima facie* evidence of every other fact necessary to be established by the plaintiff in such actions to entitle him to the relief authorized to be given in this act." This is the part of the section the constitutionality of which is assailed as being in violation of section 59 of the Constitution, which provides: "The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: (1) To regulate the jurisdiction, or the practice, of the circuits of the courts of justice. . . . (21) To authorize the creation or release, extension, enforcement, impairment or release of liens." This statute is also objected to as being in conflict with the sentence of section 60 of the Constitution which provides: "No law shall be enacted granting powers or privileges in any case where the granting of such powers or privileges shall have been provided for by a general law, nor where the courts have jurisdiction to grant the same or give the relief asked for." It is urged that the statute is a local, special act, because it provides a special rule of evidence applicable only to a specified class of actions, and to those only when they arise in cities of the first class; that, but for this provision, the ordinary practice would be to require the plaintiff in such suit, where the averments of his petition were denied, to produce competent, legal, and sufficient evidence to sustain his allegations. And, further, it is insisted that it gives to the contractor in such cases

the privilege of obtaining the relief sought upon the production of evidence which would be insufficient in other cases, and that, too, in a case where the courts have jurisdiction to give the relief asked for, if the evidence required in other cases were produced. The cases cited from the Pennsylvania court—City of Philadelphia v. Haddington M. E. Church, 115 Pa., 291, (8 Atl., 241); Ayars v. Westfield, 122 Pa., 266, (16 Atl., 356), (2 L. R. A., 577); Engle's Appeal, 137 Pa., 494 (21 Atl., 74)—would seem to support appellants' contention. In considering the question presented, all those parts of the Constitution which relate to this matter must be considered together, and it must be borne in mind that section 156, with regard to municipalities, is an exception to section 59. That section provides that: "The cities and towns of the Commonwealth, for the purposes of their organization and government, shall be divided into six classes. The organization and powers of each class shall be defined and provided for by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions." The Pennsylvania cases seem to hold that the classification of cities authorized by the Constitution of that State is confined to legislation for purposes of municipal government only, and that legislation relating to matters not under municipal control, or affecting the municipal government, is unconstitutional. This doctrine has been recognized by this court in the case of City of Louisville v. Kunz, 20 R., 805 (47 S. W., 592), and been applied to the six-months statute of limitations provided in the act for the government of cities of the first class, applicable to actions against the city for damages for injuries to persons or property which was held to be in violation of the clause of section

59 of the Constitution providing against local or special
acts "to regulate the limitation of civil or criminal causes."
Assuming that the doctrine, as broadly stated in the Penn-
sylvania cases and recognized in the Kuntz case, is the
correct doctrine, the question is whether the present stat-
ute is sustainable as relating to matters under municipal
control or affecting the municipal government.    It may be
said that it is easy to see that an act which provides a ·
special statute of limitations for actions against cities of
a designated class, or even of the classes provided for,
does not in any way affect municipal government, or re-
late to matters properly under municipal control.    On the
other hand, it is equally easy to see that provisions for
the improvement of the streets of a municipality do re-
late to municipal government, whether the improvement
is done at the expense of the municipality or at the ex-
pense of the abutting property.    So the power to make
the provision for payment for such improvement would
seem also to be properly within the powers of the munic-
ipal government.    And this power of providing for
payment by the municipality, or out of the abutting prop-
erty, seems to us, in case the cost of construction is to
be made a charge upon the property, to necessarily in-
clude the power of providing means whereby such a charge
may be created, shown, and enforced.    If the municipality,
in the exercise of governmental powers, can make the cost
of construction of a public way a charge upon adjacent prop-
erty, it must do so by creating a lien; and, if the govern-
mental power extends that far, we see no reason why it
may not extend to making provision for the time and man-
ner in which the lien shall attach, the mode in which it
may be shown to exist, and the means of its enforcement.
The argument that the right to prescribe the means by

which the existence of a lien for street improvements may
be shown is not within the grant of section 156 of the
Constitution seems to us to be equally applicable to the
right to prescribe for the creation of such lien, and, if sus-
tained, would utterly destroy the power of the munici-
palities to make such improvements a charge upon the
property supposed to be benefited thereby.    This we can
not conceive to have been the intention of the framers of
the Constitution, and, while we concur in the general state-
ment of the doctrine in the Pennsylvania cases, we are un-
able to concur in its application.

It is urged in the same connection that, even if the
statute is held constitutional, and certified copies of the
ordinance, contract, and apportionment are *prima facie* evi-
dence of every fact necessary to enable plaintiff to re-
cover, still the apportionment was erroneous, and a link
in the chain was thereby broken, which destroys the whole
chain; that the statute gives no effect, as *prima facie* evi-
dence, to certified copies of any one or two of the three
things specified in the statute in the absence of the other,
and that, if one is missing or defective, the whole chain
fails.    We do not think the statute was intended to pro-
duce such an effect, nor have we ever so applied it.    On
the contrary, in numerous cases—among them the case of
Fehler v. Gosnell, supra—we have sustained the *prima
facie* case made out by the contractor by filing certified
copies of the three papers, though we directed the appor-
tionment to be corrected.    It is not at all as if no copy of
the apportionment was filed, or no apportionment
made.    An apportionment was made, though for
a greater amount by ten per cent. than was proper
under the circumstances, and was available to make
out the *prima facie* case provided for by the statute, al-

though subsequently corrected by the court. The defect in the apportionment had merely the effect to stop costs and interest until it was corrected.

The next objection is made upon the ground that the advertisement did not fix the time for the completion of the work. It is argued that the time for the completion of the work was not fixed until after the advertisement had been had, and the letting made; and it is insisted that this was very prejudicial to the interests of the property holder, as affording an opportunity to prevent proper competition by putting it in the power of the board to make the time easy to persons in favor with that body, or difficult to bidders who were obnoxious to it. These objections seem to be well founded. The bidding ought to be under circumstances which would give to every prospective bidder equal advantages in estimating the cost of completing the contract; and the time within which it is required to be completed is, in our judgment, quite material in making such estimates. But we are of opinion that these objections come too late after the contract has been made and approved, the work done and accepted, and the apportionment made, as it is not shown that appellants were thereby prejudiced. Barrett v. Stone Co. (21 Ky. Law Rep., 669) (52 S. W., 947); Dumesnil v. Stone Co., 109 Ky., 1 (22 Ky. Law Rep., 503) (58 S. W., 371).

Objection is made upon the ground of the unconstitutional license ordinance which, it is insisted, must have had a prejudicial affect upon persons desiring to bid upon the work. That ordinance was adopted in 1896, and required all persons engaged in the doing of public works of original construction, etc., to first take out a license therefor, for which a payment of one hundred dollars was required. The license fees were payable in advance into the sinking

fund, and any one engaging in such work without first taking out the license required was subject to a fine of from five dollars to twenty dollars per day, each day's work being regarded as a separate offense. 2 Biennial Comp. Ord., p. 134. In Figg v. Thompson (20 R., 522) (49 S. W., 202), it was held that the ordinance was unconstitutional, and against public policy, as tending to limit the number of bidders for such work, and to increase the cost of street improvement to the lot owners. We are of opinion that this objection also comes too late. It does not appear that the ordinance was ever enforced, or that any one was prevented from bidding by the ordinance in this case. Fehler v. Gosnell (18 Ky. Law Rep., 241) (35 S. W., 1125). For the reasons given, the judgment is affirmed.

Whole court sitting.

Dissenting opinion by Judge Guffy:

I dissent from the opinion rendered in this case for several reasons, among which I mention the following: My opinion is that the ordinance which, it is alleged, authorized the improvements for which the property of the appellants was adjudged to be sold, was utterly void. This being true, there can be no valid contract made or entered into for such improvements, and no lien could be created upon the property of the appellants for the improvements in question. The act of the Legislature which attempts to authorize such improvements as those in question to be made at the cost of the property owners is in violation of section 171 of the Constitution of this State. It is too clear for argument that the burden imposed by the law in question is a tax. It is manifestly for the benefit of the public, and hence it must be true that it should be levied upon all the property within the territorial limits of the city authority levy-

ing the same. The act in question is also in violation of
section 13 of the Constitution and section 242.
Section 13 provides that no man's property shall
be taken or applied to public use without the consent of
his representatives, and without just compensation being
previously made to him. Section 242 provides that munic-
ipal and other corporations and individuals invested with
the privilege of taking private property for public use shall
make just compensation, etc. It is perfectly manifest that
the street improvements in question are made for the ben-
efit of the public, and the public has the same right
to enjoy and use the same that the property owner has,
and it therefore follows that requiring the property own-
er to pay the expense of the improvements in question
is in violation of the several sections of the Constitution,
supra. The statute is also in violation of the Federal Con-
stitution, which provides that no person shall be deprived
of his property without due process of law. Section 2838,
Kentucky Statutes, is also in conflict with sub-section
22 of section 59 of the Constitution. The said
sub-section forbids the Legislature by special act
to authorize the creation, extension, and enforcement, im-
pairment, or release of liens. It will be seen from the
statute in question that it provides for the creation of
liens in the city of Louisville in regard to street improve-
ments, and provides what shall be evidence of the acts
necessary to create such liens, while no such provisions are
made in respect to the creation of other liens in any other
part of the State, nor as to other liens in the city. The stat-
ute is also in conflict with sub-section 1 of section 59,
which prohibits the Legslature from regulating the
practice or jurisdiction of courts of justice, and the stat-
ute in question provides a rule of evidence in respect to

street improvements that is not made applicable to any other controversy. In my opinion, the object of the present Constitution was to give complete and equal protection to all the citizens of the Commonwealth, and any law which requires the citzen of any town or district to pay for public improvements is in violation of the Constitution, and contrary to natural justice; that it is substantially taking private property for public use without any compensation. If the streets and sidewalks are necessary for the public, the whole public should pay for the same. If they are not for public purposes, there is no excuse at all for making the same. Many other reasons might be given showing the illegality and injustice of the so-called statutes under which these oppressive burdens are enforced; but, inasmuch as the same would not affect the majority opinion in this case, I deem it unnecessary to specify the same. I most earnestly and respectfully dissent from the opinion rendered in this case. It is a well-settled rule of law that a party seeking the enforcement of a statutory right or remedy must pursue the statute strictly, or at least substantially. It seems to me that the statute itself has been almost totally disregarded in this case. It seems clear to me that the judgment appealed from should be reversed, with directions to the court below to dismiss the petition.