## Miller, et al. v. L. R. Figg Co.

## Haller v. L. R. Figg Co.

(Decided May 8, 1917.)

Appeals from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Municipal Corporations—Street Improvement—Assessment of Property For.—Under section 2833 of the Kentucky Statutes, the territory contiguous to and on both sides of a public way must be subjected to assessment for the improvement of the public way, although the territory subject to assessment on one side may be very small as compared to the territory subject to assessment on the other side.

2. Municipal Corporations—Street Improvement—Street Cannot be Crossed in Making Assessment.—A principal street cannot be crossed in making an assessment. For example, the property between "A" and "B" streets is subject to assessment for the improvement of "A" street, but the property on the opposite side of "B" street cannot be assessed for the improvement of "A" street.

3. Municipal Corporations—Authority of Council to Open Streets and Public Ways.—The opening of public ways is a matter exclusively within the control of the council and the propriety of its action cannot be inquired into by the courts unless exceptional circumstances exist.

4. Municipal Corporations—Street Improvement—Prima Facie Evidence.—Under section 2838 of the Kentucky Statutes it will be presumed that a street ordered to be improved was a public way of the city, and a mere denial in the answer of the complaining property owner that it is a public way is not sufficient to overcome the presumption. It can be overcome only by evidence in support of the pleading.

5. Municipal Corporations—Street Improvement—Board of Public Works May Accept Rejected Bid.—The Board of Public Works may reconsider its action in rejecting a bid for street improvement and accept the rejected bid.

B. F. WASHER for appellants.

WILLIAM FURLONG, attorney for Figg & Co.

PENDLETON C. BECKLEY, for appellee, City of Louisville.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

These are street improvement cases, and from the judgment enforcing liens in favor of the company that made the improvements under city ordinances the property owners appeal. The original improvements for which the liens were allowed were made on Cane Run road from 26th street to Woodland avenue, and on Woodland avenue from Cypress street to Cane Run road. Cane Run road runs from 26th street in a southwesterly direction to Cypress street, the next parallel street west of 26th street. This road is intersected and crossed about midway between 26th street and Cypress street by Woodland avenue, a street running east and west and at right angles to 26th street and Cypress street, which run north and south. On the north of Woodland avenue and Cane Run road there is a square bounded on the east by 26th street, on the west by Cypress street, on the north by Dumesnil street, and on the south it is bounded in irregular lines by Woodland avenue and Cane Run road. The assessment north of Woodland avenue and Cane Run road was made to a line on 26th street and Cypress street half way between Cane Run road and Woodland avenue on the south and Dumesnil street on the north, and there appears to be no complaint as to this taxing district.

On the south the taxing district for Cane Run road as well as Woodland avenue consists of small triangular pieces of ground contiguous to these ways. In other words, the taxing district north of these improved public ways is the size of one-half of an ordinary square, while the taxing districts on the south are the two little triangular pieces of ground mentioned. The taxing district south of Woodland avenue could not be made any larger without crossing Cane Run road, and the taxing territory south of Cane Run road could not be made any larger without crossing Woodland avenue. As the result of this situation the property north of these improved streets bears practically the whole burden of the improvements and the little triangular spaces only a small portion of the expense.

It is argued by counsel for appellant that (a) Cane Run road south of Woodland avenue is not now, never was and never will be a public highway, and that if 26th street is extended there will be no necessity for Woodland avenue south of Cane Run road; (b) the triangular pieces of ground south of Woodland avenue and Cane Run road are not large enough to be treated as taxing districts; (c) the assessment area to the south of Woodland avenue and Cane Run road ought to have extended south the same distance that the assessing area north does, so that the northern territory would have to bear only one-half of the cost of the improvement in place of being burdened with practically the whole of it.

The situation imposes a heavy burden on the property owners north of Woodland avenue and Cane Run road, but we see no way by which it can be avoided.

Section 2833 of the Kentucky Statutes provides, in part, that ''When the territory contiguous to any public way is not defined into squares by principal streets, the ordinance providing for the improvement of such public ways shall state the depth, not exceeding five hundred feet, on both sides of said improvement to be assessed for the cost of making the same, including the cost of the improvement of the intersections, if any, of said public way, according to the number of square feet owned by the parties respectively within the depth, as set out in the ordinance.''

In Louisville Ry. Co. v. Southwestern Alcatraz Asphalt & Construction Co., 24 Ky. L. R. 2380, the court had a street improvement case presenting in the shape and location of lots assessed physical situations very sim-

ilar to the ones appearing in this record, and in holding that a large area on one side of the improvement must bear the burden of the assessment, while the small area on the other side could be taxed for only a small portion of it, said: ''Baxter avenue intersects Von Borries avenue at an acute angle, and in this way the amount of property on the northeast side of Von Borries avenue assessed for the improvement is small. This threw a larger burden on the property on the south side than would otherwise have fallen on it, as the cost under the statute is assessed to both sides according to the total number of square feet. The total area assessed is 107,-555 square feet. Of this, 11,305 square feet are on the northeast side of the street, and 96,250 on the southwest side. Appellant, the Louisville Ry. Co., who owns the lot at the intersection of Highland avenue and Von Borries avenue, complains of the assessment on the ground that something like 89 per cent. of the cost of the improvement was thrown upon the property on the southwest side of the street. But the property on the northeast side pays at the same rate per square foot.'' To the same effect is Jochum v. Henry Bickel Co., 146 Ky. 73.

It has also been ruled in several cases that when the territory is not defined into squares by principal streets, the depth on both sides fronting the improvement, to be assessed for the cost of making it, is to be defined by the ordinance, and that the city council cannot cross a principal street in making an assessment. Fidelity Trust & Safety Vault Co. v. Voris, 110 Ky. 315. So that when Woodland avenue and Cane Run Road were laid off as public ways of the city in the manner described, the council, in awarding a contract for the improvement of these streets and laying off an assessing district could not do anything except what it did do in these cases. It may be that the council acted unwisely in laying off these streets or public ways in the manner it did, and that it was not necessary that either of them should have been established, but the opening of public ways is a matter exclusively in the control of the council, and the propriety of its action cannot be inquired into by the courts unless exceptional circumstances, none of which are made to appear in this case, are shown by the complaining property owners.

In section 2838 of the statutes it is provided that ''In all actions to enforce liens, a copy of the ordinance au-

thorizing the improvements or work, a copy of the contract therefor, and a copy of the apportionment—each attested by the comptroller—shall be *prima facie* evidence of the due passage, approval and publication of the ordinance, of the due execution and approval of the contract, and shall also be *prima facie* evidence of every other fact necessary to be established by the plaintiff in such actions to entitle him to the relief authorized to be given in this act.'' And therefore a mere denial that either or both of these improved places are public ways of the city is not available to the complaining property holder, in the absence of evidence sufficient to overcome the *prima facie* case made out for the city by the statute. In other words, under the statute the legal presumption is that these improved places were regularly ordained public ways of the city, and this presumption could be overcome only by evidence, a mere denial not being sufficient. Richardson v. Mehler, 111 Ky. 408.

We are referred to the case of Long v. Barber Asphalt Paving Co., 151 Ky. 1, as laying down the rule that where the property owner denies that the street is a public way, the burden of proof is on the city or plaintiff, as the case may be, to show that it was a public way. It should be kept in mind, however, that in the Long case the ordinance described Birchwood avenue as a ''private way,'' and the court said: ''There is no evidence in the record showing that this Birchwood avenue has ever been dedicated to the public as a street, or accepted or recognized by the city as such. . . . Defendant in his pleadings denies that it is a public way, and there is no evidence whatever supporting the position of the plaintiff to the contrary. With the record in this condition, we are constrained to hold that Birchwood avenue has not been shown to be a public way or street.''

But we do not find in this record any intimation or suggestion that either Cane Run Road or Woodland avenue was a private way that had been dedicated to the city, or that either of them was described in any of the ordinances as a private way. On the contrary, they are treated in the petition and ordinances, so far as the record shows, as public ways of the city. How the city came into the possession of these public ways, is not disclosed, nor is it necessary that it should have been. When a city provides for the improvement of a public way or street without describing how it acquired the right to the street, the presumption will be that it is a public street or way

of the city that the city has the right to control and improve, and when it undertakes to do either, the burden is on the objecting party to show by pleading as well as evidence, that the street or public way was not in fact such a public way.

It appears that in proper time and manner the Board of Public Works advertised for bids for these improvements, and on July 6, 1914, the bid of Figg & Co. was filed. On July 9, 1914, the bid of Figg & Co., which was the only bidder, was rejected. Why it was rejected does not appear. Thereafter, on September 25, 1914, the board reconsidered its action in rejecting the bid and accepted it without re-advertising.

Section 2829 of the statutes provides that when the Board of Public Works shall order any work to be done, it shall prepare drawings and specifications and cause an advertisement to be published informing the public of the general nature of the work and of the fact that drawings and specifications are on file, and shall call for sealed bids to do the work. It is further provided that the board shall let the contract to the lowest and best bidder, and shall have the right to reject all bids. This is an important statute for the protection of property owners, and it is not claimed that the statute was not observed by the Board of Public Works up to the time the bid of Figg & Company was filed on July 6th, but it is insisted that when this bid on July 9th was rejected, this action of the board in rejecting the bid could not afterwards be reconsidered and the rejected bid accepted; that when a bid is rejected, that is an end of it and there must be a new advertisement as if no bid had been made, or any proposition for the improvement contemplated submitted to bidders. It is further said that if this practice is authorized, the public and the property owners who had the right to presume when the bid was rejected that there would be a new letting of the work, would be deprived of the right to appear and make such objection as seemed to them proper, or such objection as they had the right to make.

If this bid made on July 6th had been accepted, no question could be raised as to the propriety of the action of the Board of Public Works, so that the only obstacle, if any, in the way of its conduct grows out of the fact that, after rejecting the bid, it reconsidered its action and accepted it. So far as we are advised by counsel, this precise question has not heretofore been presented to this

court, but it does not seem difficult of solution when it is kept in mind that the Board of Public Works is merely an administrative body that must submit to the city council for final action all contracts concerning street improvement that it makes.

In section 2829 of the statutes we find it provided in reference to street improvement contracts, that "Said board shall let said contract to the lowest and best bidder, which contract shall be subject to the approval of the general council. Said board shall have the power to reject any and all bids." It therefore appears that the Board of Public Works cannot let any contract until it has been approved by the council. The council is the final authority. So that when the board reconsidered its action in rejecting the bid of Figg & Co., and accepted the bid, it submitted the acceptance of it to the general council, and the action of the board was approved by this body.

The public and especially the property holders interested are of course deeply concerned in the proper advertisement of bids and the letting of contracts to the lowest and best bidder, but after the board has advertised in the manner required by law for bids, and bids are received in the time and manner required by the advertisement, the board may exercise a discretion as to accepting or rejecting a bid, but neither its acceptance nor rejection becomes final by any action it may take, or until the council has acted. If the board should by inadvertence or mistake accept a bid, we think it has the authority to reject it and also the authority to accept a bid otherwise in proper form that it may have theretofore rejected. We see no harm that can come to the public or property owners from this course of conduct on the part of the board, and, aside from this, the board is invested by the statute with a discretion to accept or reject. There is no time fixed when it shall take this action, nor does the statute make whatever action it shall take final or put it beyond the power of the board to correct its action before the matter has been submitted to the council. Ross v. Stackhouse, 114 Ind. 200; Davies v. Saginaw, 87 Mich. 439.

The judgment is affirmed.