CASE 42—ACTIONS BY THE BARBER ASPHALT PAVING CO. v. GAAR, AND OTHER ACTIONS TRIED THEREWITH TO ENFORCE LIENS FOR STREET IMPROVEMENTS.—APRIL 22.

# Barber Asphalt Paving Co. v. Garr.
# City of Louisville v. Barber Asphalt Pav. Co.
# Walsh, &c. v. Barber Asphalt Paving Co.
# Raffo, &c. v. Barber Asphalt Paving Co.
## (Four cases heard together.)

APPEALS FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

REVERSED IN THE TWO FIRST CASES AND AFFIRMED IN THE TWO LAST CASES.

MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—BOARD OF PUBLIC WORKS—POWERS—CONTRACTS—VALIDITY—CHANGE IN SPECIFICATIONS—STIFLING COMPETITION—APPORTIONMENT OF COST OF IMPROVEMENT—METHOD—PROPERTY ASSESSABLE—LACHES.

Held: 1. Ordinances providing for a street improvement declared that "said work shall be done in accordance with the plans and specifications on file in the office of the board of public works."

At the time of their passage there were general spcifications on file. It had been the uniform custom of the board, where an improvement had been ordered, to prepare, after the passage of the ordinance, plans and specifications as the exigencies of the particular work demanded. HELD, that it must be presumed that the board, in recommending the ordinances, and the general council in passing them, acted in view of such custom, and did not refer to the general specifications theretofore printed and on file.

2. Kentucky Statutes, 1894, section 2826, provides that no public way shall be constructed, except by ordinance recommended by the board of public works. By section 2829, whenever the board shall order any work to be done, which, according to law, is to be prepared by independent contract, the board shall prepare and place on file in the office of that department complete drawings and specifications of the work, and thereupon shall cause notice to be published that the drawings and specifications are on file, and calling for sealed proposals for the work. By section 2830, when, in the opinion of the board, it becomes necessary, in the prosecution of any work, to make alterations or modifications in the specifications or plans of a contract, such alteration or modification shall be made only by order of the board, and the order shall be of no effect until the price to be paid shall be agreed on in writing, signed by the contractor, and approved by the board. HELD to vest in the board of public works, where the council has directed an improvement in general terms, the power to prescribe the details of the work.

3. The mere fact of the board of public works, in advertising for bids for asphalt paving, called for alternative bids on two different kinds of pavement, does not invalidate the contract let by it.

4. Where the ordinance for a street improvement was silent as to how the gutters should be constructed, and the board of public works stipulated for flagstone guttering, but afterwards, as provided in Kentucky Statutes, 1894, section 2830, modified the specifications, substituting asphalt guttering, and the asphalt was cheaper, and it did not appear that more than a fair price was paid therefor, or that the board had abused a sound discretion in making the change, there was no ground for objection.

5. It is not unreasonable for a city to require a contractor doing street paving to guaranty the pavement for five years, and such a requirement does not tend to stifle competition.

6. It is not unreasonable to require the contractor to maintain a plant in the city during the five years.

7. An unconstitutional ordinance requiring payment of a license fee by contractors could be ignored 'by them, or, if they had paid anything under it, they could recover it on demand.

8. Unless it appears that under a different method of apportioning the cost of a street improvement the party complaining will be required to pay less, the apportionment made will not be disturbed.

9. Where the territory abutting a street on which paving was to be done had not been defined into squares by principal streets, the council was authorized in the ordinance to prescribe the depth on both sides to be assessed for the cost of making the improvement.

10. Where the apportionment of the cost of a street improvement is wrong, it is incumbent on the court, under the express provisions of Kentucky Statutes, 1894, section 2834, to correct it so as to do justice to all parties concerned.

11. Land within the limits of a city, though used for agricultural purposes, may be assessed for street improvements in a proper case.

12. A property owner should not be permitted to stand by in silence, and allow a street improvement to be made, and then, by raising objections, escape payment for the benefit his property has received.

WM. FURLONG and B. F. WASHER, for Barber Asphalt Co.

L. N. DEMBITZ, for Mary J. Gaar and Mary Raffo.

H. L. STONE, for City of Louisville.

LANE & HARRISON, O'NEAL & O'NEAL, STROTHER, HARDIN & STROTHER, I. T. WOODSON and J. J. McHENRY, for Cornelius Walsh, Mary Raffo and Mary Gaar.

BENJAMIN F. WASHER and WILLIAM FURLONG, attorneys for Barber Asphalt Paving Co.

### POINTS AND PRECEDENTS.

Where it is shown, as in these cases, that benefits conferred by the improvement are in excess of burdens imposed by it; and

Where it is proved, as in these cases, that nothing complained of by property holders has actually resulted to their disadvantage; and

Where it appears, as in these cases, that the construction of the street is of the very highest character and at the very lowest price,

Then all objections of the defendants are the purest technicality and courts will not be astute to find grounds for sus-

taining them. The Constitution of Common Sense; Gilmore v. City of Utica, 131 N. Y., 26; Dumesnil v. Artificial Stone Co., 22 Ky. Law Rep., 504; Joyce v. Artificial Stone Co., 23 Ky. Law Rep., 1201.

Just as long as city authorities act in an honest belief that proceedings are essential to safeguard the interests of the public, courts do not interfere to disturb the exercise of a discretion.

The general council of Louisville was the judge of when Chestnut street should be improved and in what manner.

The Board of Public Works had the right to ask for bids on both and select either asphalt pavement No. 1 or No. 2.

It had the right to require the use of a binder course.

It had the right to require a plant to remain in Louisville during the contract period of five years.

It had the right to construct the gutter with either asphalt or flag stones. Richardson v. Mehler, 23 Ky. Law Rep., 917; Burnett v. Boston, 53 N. E., 379; Gilmore v. Utica, 131 N. Y., 26; Walker v. Morgan Park, 175 Ill., 570; Bank v. Wooston, 147 Mo., 467; Bullitt v. Selvage, 20 Ky. Law Rep., 599; Henderson v. Sandefur, 11 Bush, 550; Woodward v. Collett, 20 Ky. Law Rep., 1066; Ryan v. Patterson, 49 Atlantic, 588; Van Relpen v. Jersey City, 58 N. J. Law, 262.

In order to raise the question of incorrect apportionment, it must be pleaded and proven that a wrong basis was followed and that, under the proper method, parties objecting would be required to pay a smaller amount. McHenry v. Selvage, 99 Ky., 232; Barrett v. Artificial Stone Co., 21 Ky. Law Rep., 669; Chawk v. Beville, 21 Ky. Law Rep., 769; Levy v. Coyne, 22 Ky. Law Rep., 493.

The territory adjacent to Chestnut street is a part of the city of Louisville, enjoying all the advantages of municipal life and should meet all the obligations incident thereto. It pays general taxes; why not special assessments? Oswald v. Gosnell, 21 Ky. Law Rep., 1660; Specht v. Louisville, 22 Ky. Law Rep, 699.

The property from Gaar's Lane, or Fortieth street, to Shawnee avenue is in no true sense farm land. The large tracts remaining in the district are being held as investments of city real estate. When sold or offered for sale, it is always by the foot frontage on Chestnut street and at a ruling price of twenty dollars a foot.

It is not necessary to the collection of a special assessment that every lot affected be a small building site. Leitch v. Village of La Grange, 138 Ill., 291; Taber v. Grafmiller, 109 Ind.,

206; Henning v. Stengel, 23 Ky. Law Rep., 1795; Dulaney v. Bowman, MSS. Opin.; The Modern Law of Municipal Corporations, by Smith.

Distinguished—Graham v. Conger, 85 Ky., 583; Washington Ave., 69 Pa., 352; Craig v. Philadelphia, 89 Pa., 265.

Under the present Constitution, farming or agricultural land situated within the city must be taxed just as all other real property. Pence v. Frankfort, 19 Ky. Law Rep., 721; Board of Councilmen v. Scott, 19 Ky. Law Rep., 1068; Nicholasville v. Rarrich, 19 Ky. Law Rep., 1415; Richmond v. Gibson, 20 Ky. Law Rep., 358; L. & N. R. R. Co. v. Barboursville, 20 Ky. Law Rep., 1105; Central Covington v. Park, 21 Ky. Law Rep., 1847; Bridge Co. v. Louisville, 22 Ky. Law Rep., 703.

It is too late after the work has been done under the ordinance and contract, and accepted by the city as a complete performance, for property holders to complain that the street was not necessary, or that the specifications were irregular. Fehler v. Gosnell, 99 Ky., 380; Richardson v. Mehler, 23 Ky. Law Rep., 917; Barfield v. Gleason, 23 Ky. Law Rep., 140; Joyce v. Artificial Stone Co., 23 Ky. Law Rep., 1201; Preston v. Roberts, 12 Bush, 570; Elliott on Roads and Streets.

The city of Louisville is liable under its charter to pay the contractor for all work the cost of which it had no authority to charge upon abutting property. Louisville v. Leatherman, 99 Ky., 213; Louisville v. McNaughton, 19 Ky. Law Rep., 1695; Louisville v. Nevin, 10 Bush, 550; Craycraft v. Selvage, 10 Bush, 698.

The clause of the contract providing that the contractor will look alone to the property does not give to the city complete exemption from liability, because:—

The contract provision must be construed as the charter provision has been interpreted.

The real agreement of parties fixes a liability on the city;

The city had no authority to contract itself out of its charter obligation at the expense of the citizen;

There was no consideration to support a contract giving the city exemption. Murphy v. Louisville, 9 Bush, 193; Kearney v. Covington, 1 Met., 339; Louisville v. Hyatt, 2 B. Mon., 199; Memphis v. Brown, 20 Wall., 289; Paving Co. v. Harrisburg, 64 Fed. Rep., 283; Chicago v. People, 56 Ill., 327; Maber v. Chicago, 38 Ill., 372; Fisher v. St. Louis, 44 Mo., 482; Scofield v. Council Bluffs, 68 Iowa, 695.

Distinguished—Bellevue v. Hohn, 82 Ky., 1.

"Previous to the present charter of Louisville, from defects in the proceedings, grave losses were some times sustained by contractors, although they had faithfully performed their con-

Barber Asphalt Paving Co. v. Gaar, Etc.    (4 cases.)

tracts.  The statute was passed to remedy these evils by se-
curing the contractor in his pay where he had faithfully per-
formed his contract, and seems conclusive of the case at bar."
Judge Hobson, in Dumesnil v. Stone Co.

HENRY L. STONE FOR CITY OF LOUISVILLE.

The contractors in the above styled cases can not recover any
sum against the city of Louisville under the express covenants
of the contracts sued on.  Trustees of Bellevue v. Hohn, 82
Ky., 1; Town of Bellevue v. Peacock, 89 Ky., 495; Murphy v.
City of Louisville, 9 Bush, 189; Dillon on Municipal Corpora-
tions, sec. 480; City of New Albany v. Sweeney, 13 Ind., 245;
Creighton v. City of Toledo, 18 Ohio St., 447; Quill v. City
of Indianapolis, 124 Ind., 292; Johnson v. City of Indianapolis,
16 Ind., 227; Whalen v. City of LaCrosse, 16 Wis., 271; Fletcher
v. Oshkosh, 18 Wis., 228; Heller v. City of Milwaukee, 96 Wis.,
134; Hall v. Chippewa Falls, 47 Wis., 267; Moylan v. City
of New Orleans, 32 La. Ann., 673; Lovell v. City of St. Paul,
10 Minn., 290; Hunt v. City of Utica, 18 N. Y. (4 E. P. Smith),
442; Swift v. City of Williamsburg, 24 Barb., (N. Y.), 427;
Goodrich v. City of Detroit, 12 Mich., 279; Affeld v. City of De-
troit, 112 Mich., 560; City of Leavenworth v. Rankin, 2 Kan.,
357; Saxton v. City of St. Joseph, 60 Mo., 153; Keating v.
City of Kansas, 84 Mo., 415; German-American Savings Bank
v. Spokane. (17 Wash., 315), 38 L. R. A., 259; Wheeler v.
City of Poplar Bluffs, 3 Mun. Corp. Cases, 20; Town of Cen-
tral Covington v. Weighans & Bro., 19 R., 1979; 3 Mun. Corp.
Cases, 20; City of Covington v. Nadaud, 103 Ky., 455; Sess.
Acts, 81, vol. 1, p. 991; Burnett's City Code, 504; Sess Acts,
1885-6, vol. 1, p. 1153; City of Louisville v. Hexagon Tile Walk
Co., 45 S. W., 667; Craycraft v. Selvage, 10 Bush, 696; Cald-
well v. Rupert, 10 Bush, 179; City of Louisville v. Nevin, 10
Bush, 549; City of Louisville v. Hyatt, 2 B. Mon., 177, 5 B.
Ion., 199; City of Louisville v. Leatherman, 18 R., 124; City
of Louisville v. McNaughton, 19 R., 1695; Barber Asphalt Pav-
ing Co. v. City of Harrisburg, 64 Fed., 283; Hitchcock v. Gal-
veston, 96 U. S., 341; City of Chicago v. People, 56 Ill., 327;
White v. Schnell, 5 Pick., 425, S. C., 9, Id., 16; Maher v. City
of Chicago, 38 Ill., 266; Hussey v. Sibley, 66 Me., 192; Miller v.
Milwaukee, 14 Wis., 642; Scofield v. City of Council Bluffs,
68 Iowa, 695; Bucroft v. City of Council Bluffs, 63 Iowa, 646;
Fisher v. St. Louis, 44 Mo., 482; Saxton v. St. Joseph, 60 Mo.,
152; Bill v. City of Denver, 29 Fed., 344; Roter v. City of Su-
perior (Wis.), 91 N. W. Rep., 651; Porter v. City of New
Whatcom (Wash.), 65 Pac. Rep., 197; Sec. 2833, Kentucky
Statutes.

Barber Asphalt Paving Co. v. Gaar, Etc.  (4 cases.)

LANE & HARRISON, ATTORNEYS FOR APPELLANTS, WALSH, RAFFO, GAAR, &c.

O'NEAL & O'NEAL, STROTHER, HARDIN & STROTHER, I. T. WOODSON, J. J. McHENRY, L. N. DEMBITZ, OF COUNSEL.

### PROPOSITIONS INVOLVED AND AUTHORITIES.

1. The right of recovery for the improvement of a public way against the municipality or the abutting property owner, constructed under authority of the act for the government of cities of the first class, approved July 1, 1893, rests in contract, and no recovery can be had thereon without allegation and proof, if denied, of a substantial compliance therewith, and while the acceptance by the municipality, without fraud or collusion, will amount to a waiver of defects in the execution and bind the property owner to make payment, it is not in the power of the local government, by an acceptance thereof, to bind the lot owner to pay therefor where the contract for the improvement has been only partly performed.  Part performance is not the equivalent of defective execution.  Murphy v. Louisville, 9 Bush, 189; Haffey v. Letcher, 9 Ky. Law Rep., 287; Henderson v. Lambert, 14 Bush, 28; Murray v. Tucker, 10 Bush, 240.

2. The statute gives to the general council alone the power to select the character and quality of material which is to enter into the improvement by original construction of a public way, at the expense of the owners of lots contiguous thereto, and the exclusive power to determine the extent of the improvement to be made.  This power is legislative—it is the power of taxation—it does not admit of delegation and none of the powers vested in or duties required by the statute of the general council in the selection of the material which is to enter into the construction of such improvement or in determining the extent of the improvement can be exercised or performed by an executive or ministerial board.  Hydes v. Joyce, 4 Bush, 468; Zable v. The Orphans' Home, 92 Ky., 95; Henderson v. Lambert, 14 Bush, 28; Haffey v. Letcher, 9 Ky. Law Rep., 286; Murray v. Tucker, 10 Bush, 240; Richardson v. Mehler, 23 Ky. Law Rep., 921.

3. An ordinance of a city of the first class, for the improvement by original construction of a public way, at the cost of the owners of land contiguous thereto is the only authority in the board of public works to have the improvement made. Without such ordinance no contract for the construction of the improvement can be entered into or made.  The provisions of

such ordinance admit of no substitutes or equivalents, and upon the validity of such ordinance depends the liability of the lot owner to make contribution to such cost, and but for the ordinance there is no liability whatever on the part of the owner, and moreover, such ordinance can not be altered or amended in any way except by repealing it. Richardson v. Mehler, 23 Ky. Law Rep., 921; sec. 2777 of the Kentucky Statutes.

4. An ordinance which imposes on the owners of lots, contiguous to a public way, not only the cost of the labor and material which enter into and constitute its entire improvement by original construction, but in addition thereto the cost of constructing and maintaining in the city of Louisville for five continuous years a plant with which and in which to manufacture and prepare the material to construct and keep in repair the improvement, is in violation of sections 2832 and 2833 of the Kentucky Statutes, and makes the burden upon the lot owners more onerous than allowed by the statute, and consequently renders such ordinance void. , Figg v. Thompson, 20 Ky. Law Rep., 1322; Kansas City v. O'Conner, 82 Mo., Appeal, 655; Brown v. Jenks, 98 Cal., p. 12; Fehler v. Gosnell, 18 Ky. Law Rep., 233.

5. The validity of an ordinance or a statute always depends not on what is done under it, but by what may by its authority be done, and where the provisions of an ordinance are so interwoven one with the other that the consideration of one is also the consideration of the other, if either is void, the vice of that one destroys the whole ordinance. Stewart v. Palmer, 74 N. Y., 188; Davis v. Harris, 46 N. J. L., 86.

6. A valid ordinance is a condition precedent to any liability on the part of a property owner for the cost of such an improvement, and where there is no such ordinance, it is wholly immaterial whether the assessment of the cost is made out on the correct rules of apportionment or not. Richardson v. Mehler, 23 Ky. Law Rep., 921; Worthington v. Covington, 82 Ky., 265.

7. When the territory contiguous to a public way to be improved is not defined into squares upon each side, but there are on each side of the way to be improved parallel streets, not further therefrom than an ordinary square, and already dedicated, it is the duty of the general council in fixing the tax limit to conform to the charter district, and to extend the assessment limits upon each side one-half the distance to such parallel street, and unless the general council in fixing the tax district conforms to this requirement, the ordinance is void. Preston v. Roberts, 12 Bush, 584-586; Cooper v. Nevin, 11 Ky. Law Rep.,

402; Cooper v. Nevin, 90 Ky., 95-96; Fidelity v. Voris, 22 Ky. Law Rep., 1875.

8. Legislative mistakes, either of the General Assembly or general council, in fixing of tax districts can not be amended or corrected, or the omission therein supplied by the courts, and wherever the tax district in its formation violates the rule of equality, or imposes the burden upon a few for the benefit of many, the ordinance or act imposing the levy will be held void by the courts. Loeser v. Redd, 14 Bush, 23; McLean v. Deposit, 81 Ky., 254; Louisville v. Nevin, 16 Ky. Law Rep., 439; Graham v. Conger, 82 Ky., 582; Barbour v. Louisville, 82 Ky., 657; Selvage v. Lucas, 106 Ky., 730.

9. Under the provisions of the Constitution of September 28, 1891, and the laws passed in pursuance thereof, all the estates of every character and description, unless granted an immunity therefrom by the Constitution, are subject to taxation, according to value for the revenue purposes of the government, while no estates except lands, and they only, when specially so provided by statute, are subject to assessment according to area or frontage to pay the cost of improving public ways along their front. Frankfort v. Scott, 19 Ky. Law Rep., 1068; Pence v. Frankfort, 19 Ky. Law Rep., 721; Gosnell v. Louisville, 20 Ky. Law Rep., 524.

10. There is no common law liability on the owner of a lot to pay the cost of improving a public way along its front, nor can assumpsit be maintained against him because the lot is benefited. The fact that the lot is benefited furnishes the foundation upon which is rested legislative authority to impose upon the lot owner the obligation to pay, and so long as the lot owner is not spoliated out of his property by the exercise of the power, neither the court nor the owner can originate an inquiry as to whether the lot has been benefited or injured by the improvement. In either event the liability of the lot owner remains the same. Pearson v. Zable, 78 Ky., 174; Preston v. Rudd, 84 Ky., 156; Bullitt v. Selvage, 20 Ky. Law Rep., 599; Broadway v. Baptist Church, 8 Bush, 517-518.

11. The power to impose the cost of improving public ways upon lands contiguous thereto must be exercised within defined limits. There must be tax districts. (Cooley on Constitutional Limitations, 495.) And these tax districts so formed in cities of the first class must be formed on the conditions existing at the time, and not upon speculations as to what will occur in the future. Baker v. Selvage, 7 Ky. Law Rep., 838; Preston v. Roberts, 12 Bush, 484; Dunlap v. Gosnell, 18 Ky. Law Rep., p. 9; Walston v. Nevin, 86 Ky., 499; Dumesnil v. Gleason, 99 Ky., 660.

12. Where the territory contiguous to public ways to be improved is not defined into squares or bounded by streets, the general council must, in the formation of the district, conform to the conditions which enter into the formation of the legislative square upon which is imposed by this statute the cost of improving the public ways binding upon it, whereby is manifested the intention of the Legislature that each improvement shall be made at the cost of those persons presumed to be specially and directly benefited by it, and so as to present arbitrary and unequal assessments without equivalent advantages. Washle v. Nehan, 97 Ky., 357; Dumesnil v. Gleason, 99 Ky., ·658; Fidelity v. Voris, 22 Ky. Law· Rep., 1875; Boone v. Nevin, 15 Ky. Law· Rep., 547; Section 2833 of the Kentucky Statutes; Graham v. Conger, 85 Ky., 582-587; Covington v. Matson, 17 Ky. Law Rep., 1323; Harrodsburg v. Renfro, 22 Ky. Law Rep., 806; Preston v. Roberts, 12 Bush, 585; Cooper v. Nevin, 11 Ky. Law Rep., 879; Schmelz v. Giles, 12 Bush, 494; Levy v. The City, 97 Ky., 409.

13. It is not in the power of the General Assembly or of the general council to create within the limits of a city of the first class a tax district having in it no element in common with any other district in such city, and impose upon such district a liability equal to that imposed upon other districts, notwithstanding equivalent advantages can not result to the property charged, from the improvement made.    Howell v. ' Bristol, 8 Bush, 498.

14. For the General Assembly or the general council in the establishment of a tax district upon which to impose according to frontage or area the cost of improving ιa public way, throughout the continuous length of one mile or more, to *assume* that the same amount of material will be used and the same amount of labor performed at each point along the construction of the improvement, and to impose the whole ″cost of the improvement upon the territory fronting the same, and to a depth of 171 feet, to be apportioned against the owners of lots within such districts, and according to the number of square feet owned by each is the exercise of arbitrary power, and its exercise forbidden by the Constitution of the State.   Barker v. Southern Improvement Co., 20 Ky. Law Rep., 799.

15. Where the territory within the limits of a city of the first class is so located with reference to the boundary of the city, that the same can not be formed into squares so as to derive like advantages as other property in such city, charged with the cost of improving the streets along its front, and where such property is made up of gardening lands, agricultural lands and suburban property, it is not in the power of the

Barber Asphalt Paving Co. v. Gaar, Etc.    (4 cases.)

Legislature or of the general council to impose upon such prop-
erty the cost of improving a street along its front. Graham
v. Conger, 85 Ky., 587; Parkland v. Gaines, 88 Ky., 566; Wash-
ington Ave., 69 Pa. St., 552; Seely v. Pittsburg, 82 Pa. St.,
360; Kaiser v. Weiss, 85 P. St., 366; Craig v. Philadelphia, 89
Pa. St., 265; 105 P. St., 445, 126 Pa. St., 581; 148 Pa. St.,
456, 160 Pa. St., 499.

16. It is not in the power of the Legislature to impose upon
the owners a tax which produces the most oppressive inequal-
ity, and which compels a small minority of taxpayers to pro-
vide, at their sole expense, an improvement of general utility
and public interest, the construction of which costs more than
double as much as the character of such improvement in gen-
eral use, and from which, when constructed, the general public
derives more advantages than the property owner, it assumes
the character of an attempted exercise of arbitrary power over
the property of the minority; it becomes in the constitutional
sense, a taking and appropriation of their property to public use
without compensation.

No such power over the property of the citizen can be con-
stitutionally exercised by any department of our State govern-
ment. Howell v. Bristol, 8 Bush, 493.

AUTHORITIES CITED BY

L. N. DEMBITZ, ATTORNEY FOR E. C. BOHNE, APPELLANT.

Hynes v. City of Chicago, 175 Ill., 55; Libby v. City of Chi-
cago, 187 Ill., 189; Willis v. The Same, 189 Ill., 103; Esroger
v. The Same, 185 Ill., 420; Kuester v. Chicago, 187 Ill., 21;
Lusk v. Same, 176 Ill., 207; Beach v. Same, 196 Ill., 369;
Piedmont Paving Co. v. Allfman, 136 Cal., 88, 68 Pac., 493;
Grant v. Barber, 138 Cal., 188; Chase v. Sheerer (Cal.), 68
Pac., 768; Richardson v. Mehler, 23 L. R., 920, 921; Murray v.
Tucker, 10 Bush, 240; City of Henderson v. Lambert, 14 Bush,
24; Fishburn v. City of Chicago, 171 Ill., 338; Verdin v. Mis-
souri, 131 Mo., 26; Dean v. Charlton, 23 Wis., 590; Nicolson
Pavement Co. v. Painter, 35 Cal., 699; Schoenberger v. Field, 68
Mo. App., 94; Smith v. Improvement Co., 161 N. Y., 184; Dil-
lon Mun. Corp., (1890), sec. 469.

OPINION OF THE COURT BY JUDGE HOBSON, AFFIRMING IN PART
AND REVERSING IN PART.

By an ordinance approved August 22, 1898, the general
council of the city of Louisville provided for the improve-
ment of the carriage way of Chestnut street from Thirty-

first to Thirty-fourth street, and by another ordinance, approved on the same day, it provided for the improvement of the carriage way of Chestnut street from Thirty-fourth street to Shawnee avenue. Contracts were made with the Barber Asphalt Paving Company for the construction of the street under the ordinances. The company complied with its contract. The work was examined and accepted by the city. The cost was apportioned among the owners of property fronting on the street, and apportionment warrants were issued therefor. A number of these warrants remaining unpaid, the company instituted two actions in the Jefferson circuit court to enforce them. Answers were filed by the property owners controverting their liability for the improvement, and on final hearing the circuit court held that the property between Thirty-first street and Gaar's Lane, or Fortieth street, was liable to assessment for the improvement, and the lien of the plaintiff was ordered to be enforced; but as to the property between Gaar's Lane, or Fortieth street, and Shawnee avenue, it held that the city had no authority to improve the street at the cost of the adjacent landowners, and it accordingly rendered judgment in favor of the defendants and against the contractor as to this property, but entered a judgment in favor of the contractor against the city for the amount of these warrants. From this judgment the four appeals before us are prosecuted.

In Barber Asphalt Paving Co. v. Gaar *et al.*, the contractor complains of that portion of the judgment denying it relief against the property lying between Fortieth street and Shawnee avenue. In City of Louisville v. Barber Asphalt Paving Co. the city complains of so much of the judgment as makes it liable for this part of the improvement. In Cornelius Walsh *et al.* v. Barber Asphalt Co. the owners

of property from Thirty-fourth street to Fortieth street complain of so much of the judgment as holds their land liable for the cost of constructing the street in front of it. In Raffo et al. v. Barber Asphalt Paving Co. the owners of property from Thirty-first to Thirty-fourth street complain of the judgment holding their property liable.

The last two appeals are prosecuted separately, as two separate actions were brought in the circuit court, and the questions made are not identical in some respects. For convenience all the appeals will be considered together. The city of Louisville purchased Shawnee Park something over ten years ago. At that time it lay without the city limits, but in the year 1894 the city limits were extended so as to take in the park. This was done by taking into the city a narrow tongue of land 460 feet in width and something over a mile long, extending from a line 200 feet west of Thirty-fourth street to Shawnee avenue. Sixty feet of this strip throughout its entire length was taken up by Chestnut street, leaving a strip 200 feet wide on each side of it. This extension of the city limits appears to have been made without protest on the part of the property owners. After the territory was taken into the city, the county authorities ceased to keep the roadway in order, and, there being considerable travel on it, it got in very bad repair in the four years elapsing after it was taken into the city before the improvement was ordered. Some of the property owners were active in procuring the council to order the improvement, others were silent, and some held a meeting and protested, but they took no active steps to prevent the improvement being made as directed in the ordinances. The first of the ordinances under which the work was done is in these words:

"Be it ordained by the general council of the city of

Louisville: That the carriage-way of Chestnut street from the center line of Thirty-first street to the center line of Thirty-fourth street extended from the north, shall be thirty-six (36) feet in width, and shall be improved by grading, curbing and paving with the asphalt pavement, with corner stones at the intersections of streets and alleys. Said work shall be done in accordance with the plans and specifications on file in the office of the board of public works and at the cost of owners of ground on the south side of Chestnut street from Thirty-first street to the center line of Thirty-fourth street extended from the north and extending back to a line 171 feet distant from and parallel to Chestnut street, and on the north side of Chestnut street from Thirty-first street to Thirty-fourth street as provided by law. The cost to be equally apportioned among the owners of property according to the number of square feet of ground owned by the parties respectively within the limits as above set out, and that all ordinances in conflict herewith be and are hereby repealed."

The other ordinance is similar, except that after providing for the improvement, it is as follows:

"Said work shall be done in accordance with the plans and specifications on file in the office of the board of public works and at the cost of owners of ground on the north side of Chestnut street from the center line of Thirty-fourth street to a line at right angles to Chestnut street, passing through a point where the center line of Shawnee avenue extended from the south intersects the center line of Chestnut street and extending back to a line 171 feet distant from and parallel to Chestnut street and on the south side of Chestnut street from the center line of Thirty-fourth street extended from the north to a line at right angles to Chestnut street, passing through a point where the center

line of Shawnee avenue extended from the south intersects the center line of Chestnut street and extending back to a line 171 feet distant from and parallel to Chestnut street. The cost to be equally apportioned among the owners of property according to the number of square feet of ground owned by the parties respectively within the limits above set out, and that all ordinances in conflict herewith be and are hereby repealed."

At the time the ordinances were passed there were general specifications, which had been printed, on file in the office of the board of public works, but the contract was not made according to these specifications. The board, according to its custom, prepared, after the ordinances were passed, plans and specifications for the work, and the contract was made thereunder. By section 4 of the specifications the guttering was to be made of flagstones. After the contract was let, the board of public works, by a written contract with the contractor, changed this, and allowed the guttering to be made of asphalt. By section 22 of the specifications the contractor was required to erect a permanent plant in the city limits, which should remain there during the time of the guaranty period—five years. The specifications were in the alternative for either asphalt pavement No. 1 or asphalt pavement No. 2. The advertisements were so made. Bids were received on both classes of pavement, and the board accepted the bid for pavement No. 1. The difference between No. 1 and No. 2 consists in the thickness of the pavement, No. 1 being thicker, and costing something over $2 more per square of 100 feet than No. 2. The specifications also called for a binder course underneath the asphalt or surface pavement. Madison street runs parallel with Chestnut and 340 feet from it on the north. Magazine street runs parallel with Chest-

nut, and is 420 feet from it on the south. The tax limits for the improvement are fixed at 171 feet on the south side of Chestnut, as well as on the north side, while one-half the distance to Magazine street is 210 feet. The apportionment was made as to each fourth of a square from Thirty-first street to Thirty-fourth street, and from Thirty-fourth street to Shawnee Park the apportionment was made from one cross-street to the next, this territory not being defined into squares by principal streets.

It is insisted for the property owners that the proceedings are void, and created no lien upon the property for the following reasons: (1) Because the contract was not made in accordance with the general specifications in existence when the ordinances were passed, and a discretion as to the amount and the cost of the work to be done was left by the lawmaking body to an executive board. (2) Because the material for part of the work was unlawfully changed from that required by the ordinance and contract, and something else was received in place of it. (3) Because both the ordinance and the specifications tended toward stifling competition, and imposed on the lot owners burdens which they ought not to bear. (4) The burden was thrown on the property extending back from the street 171 feet, and not 210 feet or half way to Magazine street on the south from Thirty-first to Thirty-fourth street, and west of Thirty-fourth street to Shawnee avenue the burden was thrown on the property running back 171 feet from the street on both sides, while the city boundary along here extended out 200 feet from the street, and thus 29 feet of land within the city boundary was exempted from the burden. (5) The territory contiguous to Chestnut street from Thirty-fourth street to Shawnee avenue was not defined into squares by principal streets, and there existed no authority in the

general council to prescribe by ordinance for the construction of an improvement for more than a mile in length at the cost of the owners of lots contiguous thereto to a depth of only 171 feet, to be apportioned equally, as set out in the ordinance. (6) This territory was in part suburban and in part agricultural,. and to enforce the lien on the land is to appropriate the property of the citizen to public use without compensation therefor to the owner. These objections will be considered separately.

1. It was held in Richardson v. Mehler, 111 Ky., 408 (23 R., 917), (63 S. W., 957), where the ordinance directed the street to be improved with vitrified brick· or block pavement "in accordance with the plans and specifications on file in the office of the board of public works," that the words, "in accordance with the plans and specifications on file in the office of the board of public works," might be rejected, and that the ordinance without these was sufficient. We see no reason why the same rule should not apply to an ordinance requiring the improvement of the street with asphalt pavement. It is clear from the proof that it has been the uniform custom of the board of public works in each case where an improvement is ordered to prepare after the passage of the ordinance plans and specifications as the exigencies of the particular work demanded, and we must presume that the board of public works, in recommending the ordinances in question, and the general council in passing them, acted in view of this well-known custom of transacting the business, and did not refer to the general specifications theretofore printed and on file in the engineer's office, which were in fact never considered in making the contract. By section 2826, Kentucky Statutes, 1894, no public way shall be constructed except by ordinance recommended by the board of public works. By

section 2829, whenever the board shall order any work
to be done, which, according to law, is to be performed by
independent contract, the board shall prepare and place
on file in the office of that department complete drawings
and specifications of the work, and thereupon shall cause
notice to be published of the fact that the drawings and
specifications are on file, and calling for sealed proposals
for the work.  By section 2830, when, in the opinion of the
board, it becomes necessary in the prosecution of any work
to make alterations or modifications in the specifications
or plans of a contract, such alteration or modification shall
be made only by order of the board, and the order shall
be of no effect until the price to be paid shall be agreed
upon in writing, signed by the contractor and approved by
the board.  These three sections must be read together, and
evince, when taken together, a purpose on the part of the
Legislature in creating the board of public works, to vest
in it, where the council has directed an improvement in
general terms, the power to carry out in detail the work
so directed, on the idea that in the matter of these details
the board of public works is better calculated to look into
each and properly guard the interest of the city than the
general council can possibly be with the limited time at its
disposal.

If the board had made plans and specifications for only
asphalt pavement No. 1, and had advertised only for bids
on this, it could not be maintained, under the rule laid
down in the case referred to, that the contract was inval-
id.   The fact that it advertised for alternative bids on
pavement No. 1 and on one that was thinner, but rejected
the bid for the thinner pavement, is of no more effect on
the contract than if they had advertised alone for bids on
the thicker pavement.  The council having simply directed

the pavement to be laid with asphalt, and of a certain width, the board was left by the statute with a discretion as to the details of the construction of the pavement, these not having been prescribed by the council. We think this is the fair meaning of the statute, and that the power to pass on the depth of the pavement is necessarily carried with the power to make plans and specifications and to control other matters of minutiae, such as whether there shall be a binder course, or whether a certain quality of asphalt shall be used.

2. What we have said disposes of the second objection. The ordinance was silent as to how the gutters should be constructed. This the council left to be regulated by the board of public-works with the other details of the contract in the plans and specifications. The board stipulated in the contract for flagstone gutterings, but afterwards, in the prosecution of the work, as provided by section 2830, modified the specifications by a contract in writing, signed by the contractor and approved by the board, substituting asphalt guttering for the flagstones. The change was in the interest of the property holders, for the asphalt was cheaper than the flagstones. There is no evidence that more than a fair price was paid for the substituted guttering, or that the board abused a sound discretion in making the change. The presumption is in favor of their official action, and, in the absence of proof, it can not be assumed that the change was made in the interest of the contractor, or that any injury resulted therefrom to the property owners.

3. The objection that the ordinance and specifications tended toward stifling competition is based on the specifications made before the ordinance was enacted. The specifications prepared by the board of public works after the ordinances were passed seem to contain nothing which

is fairly liable to objection on this ground, and, as the contract was not made under the other specifications, it was not affected thereby. It is not an unreasonable requirement on the part of the city that the contractor shall guaranty the pavement for five years, for there are many defects which are not discoverable at first, and the guaranty of the pavement for five years secures the city against a construction of the street in a manner or with material insufficient for the purposes contemplated. The requirement that the contractor shall maintain a permanent plant in the city during this period is reasonable, for in the case of an asphalt street, especially, the repairs must be made promptly and properly. The city had a right to protect itself, not only by the bond of the contractor, but by a reasonable requirement securing the performance of the bond, and relieving it of the necessity of litigation. The cost of the permanent plant was small as compared with the contract, and a large discretion is given the city authorities in matters of this sort, which the courts will not interfere with unless palpably abused.

The ordinance requiring the payment of a license fee by contractors was held unconstitutional by this court. Being unconstitutional, it was a nullity. From a nullity no rights can arise, and by it no rights are affected. The ordinance being void, the contractors had a right to ignore it. They could not be required to pay anything under it, and, if they did pay anything they were entitled to recover it on demand. We are unable to see, therefore, that there was anything in the ordinance or specifications looking toward stifling competition, or imposing on the lot owners burdens which they ought not to bear.

4. The rule is that, unless it appear that under a different method of apportionment the party complaining would be

required to pay less than under the method adopted, the apportionment as made by the city authorities will not be disturbed.   McHenry v. Selvage, 99 Ky., 232; 18 R., 473; 35 S W., 645; Barrett v. Falls City, etc., Coal Co., 21 R., 669; 52 S. W., 947; Chawk v. Beville, 21 R., 1769; 56 S. W., 414; Levy v Coyne, 22 R., 493; 57 S. W., 790.   We are unable to see from the record that the property owners on the south side of Chestnut street between Thirty-first and Thirty-fourth streets were in any wise prejudiced by the act of the council in fixing the depth of the taxing district at 171 feet.   The council seems to have acted upon the idea that this would be one-half the distance to the next street when the streets on the south were extended through this territory; and whether they were correct in this or not we need not consider, as it is not shown that any of the property holders complaining would have had to pay less if the depth on the south had been fixed at 210 feet; and the fact is we are by no means clear from the proof that the council made a mistake as to the territory lying between Thirty-first and Thirty-fourth strets.   The territory lying west of Thirty-fourth street not being defined into squares by principal streets, the council was authorized in the ordinance to prescribe the depth on both sides fronting the improvement to be assessed for the cost of making it, and we see nothing in the evidence to show that the council abused a sound discretion in fixing the depth on each side at 171 feet.

5. This disposes also of the fifth objection, for if it be admitted that the ordinance should not have directed the cost of the improvement for more than a mile in length to be apportioned among the owners of lots contiguous thereto throughout its entire length, it is not shown that appellants were in anywise prejudiced by the apportion-

ment which was in fact made, and, if the apportionment was wrong, it would be incumbent on the court, under section 2834, Kentucky Statutes, 1894, to correct it so as to do justice to all parties concerned. No cause is, therefore, shown for disturbing the judgment on this ground.

6. In Oswald v. Gosnell, 21 R., 1660, 56 S. W., 165, where an ordinance for the erection of fire hydrants in this territory was before the court, we held that all the steps in the annexation of the territory to the city had been legally taken and that the territory was properly a part of the city. Fire hydrants have been located along the street from Thirty-first street to Shawnee avenue. Water and gas mains have been laid. The street is illuminated by electric lights. City police control the district. The city firemen furnish it fire protection. A bus line is maintained from Twenty-eighth street to Shawnee avenue. Property along the street as improved is numbered according to the scheme prevailing throughout the city. As far west as Fortieth street the land is cut up into building lots with a few small exceptions, and between Fortieth street and Shawnee avenue several fine houses have been built. Sewer connection has been furnished. A number of parallel projected streets north and south of Chestnut street have been dedicated in the several additions made to the city, and, as shown by the photographs of Chestnut street from Thirty-fourth street to Shawnee avenue, it presents throughout the appearance of a city street. Before the construction of the street the property fronting on it sold for prices ranging from $10 to $12 a front foot; since its construction it has ranged in price from $15 to $22 a foot. The street cost something over $4 a foot, and under all the evidence we are satisfied the benefit to the property from the construction of the street as a whole from one end to the

other exceeds the cost of the work. This is so evident from
the proof that in the elaborate argument of the case no
objection was made by any of the counsel to the assess-
ment on the ground of want of benefits. While some of
the land is used for truck farming, it is all suitable for
residence purposes, and is very desirable therefor. The
value of the land by the front foot and character of houses
that are erected along the street show that it is only a
question of a short time when it will be all cut up into
building lots. The annexation had been contemplated for
a number of years before it was made, the construction
of the street was a necessity at the time it was ordered,
and without it the building up of this territory would nec-
essarily have been much retarded. Land within the lim-
its of a city, although used for agricultural purposes, is
subject to local assessment for street improvements, under
such circumstances as are shown here. In Smith on Mu-
nicipal Corporations, section 1236, the rule is thus stated:
"Property within the limits of a city, which is unplatted,
is liable to special assessment for local improvements, as if
laid off into blocks and lots; and so farming lands within
the limits of a town are subject to taxation by the town
authorities, and it is not essential that they receive bene-
fits and protection. Urban property may be assessed for a
local improvement, though not divided into lots, and though
used for farm purposes, if the surounding property is ur-
ban property. It is sometimes difficult to determine
whether the property is city property, and liable for local
improvements, or whether it is rural, and not subject to
assessment. No hard and fast rule on the subject can be
laid down. It necessarily depends on the special circum-
stances of each case." In determining the liability of the
property for the cost of the improvement after it has been

made, the court has a very different question before it than
would be presented if the objection was now made to the
annexation of the property between Fortieth street and
Shawnee avenue, and the propriety of the annexation was
the question to be determined, or even if the property
owners had enjoined the construction of the street at their
cost when ordered by the council.  But they stood by, and
allowed the improvement to be made, and, without notice
to him, allowed the contractor to expend his money in
making it upon the faith that the cost was to be a charge
upon the abutting property.  This distinction has often
been pointed out by this court.  Preston v. Roberts, 75 Ky.
570; Fehler v. Gosnell, 99 Ky., 380; 18 R., 238 (35 S. W.,
1125); Richardson v. Mehler, 111 Ky., 408 (23 R., 917); (63
S. W., 957).  In Elliott on Roads and Streets, section 590,
it is well said:  "The fact that a street is being improved
by order of public officers ought to put the property owner
upon inquiry, and to him should be applied the familiar
rule that one put upon inquiry is chargeable with notice of
all the facts which a reasonably diligent investigation will
disclose.  Public works  are  undertaken,  as  every one
knows, under authority delegated by law to public officers,
and there is little or no reason why a property owner, who
has full notice of what is being done, should be allowed
to stand by in silence until the work is completed, and then
escape paying for the benefit his property has received.  If
he would avoid this result, he should act promptly, and, if
he fails, he should not demand that the persons who have
done the work should go unpaid."  We have been referred
to no provision of the Constitution or statutes under which
property within a city may be exempted from assessment
for municipal improvements by the bare fact that the land
is used for agricultural purposes.  There is nothing in the

case to warrant the application of the rule forbidding the
taking of private property for public uses without just com-
pensation.  Considering the benefit which this property re-
ceives from the improvement, the size of the city of Louis-
ville, its growth in the direction of Shawnee park, the
value of the property by the front foot, its situation and
surroundings, we are satisfied that under the rule estab-
lished by the current of authority none of the land, after
the improvement has been made, should be exempted from
paying for it.   Leitch v. LaGrange, 138 Ill., 291, 27 N. E.,
917; Taber v. Grafmiller, 109 Ind., 206, 9 N. E., 721; Mel-
land v. Linton, 60 Neb., 249, 82 N. W., 866, and cases cited.
The case of Graham v. Conger 85 Ky., 583, 11 R., 12, 4 S.
W., 327, involved the constitutionality of a legislative act
taxing the abutting property for the improvement of a
county road.  This was not city property or a city high-
way.   The case rests on the idea that the burden of keep-
ing the road up was by general law placed on the entire
county, and that the charge on the abutting property was
so great as to amount to spoliation.  The cases of Wash-
ington Avenue, 69 Pa., 352, 8 Am. Rep., 255, and Craig v.
Philadelphia, 89 Pa., 265, are equally inapplicable.

On the appeals in Barber Asphalt Company v. Gaar and
of City of Louisville v. Barber Asphalt Company, the judg-
ment is reversed, and cause remanded, with directions to
enter a judgment as above indicated.  On the appeals in
Cornelius Walsh v. Barber Asphalt Company and Mary H.
Raffo v. Barber Asphalt Company the judgment is af-
firmed.

Petitions for rehearing overruled.